(No. 14196.—Judgment affirmed.)

THE PEOPLE *ex rel.* Fred Salm, Jr., County Collector, Appellee, *vs.* LARKIN SCOTT *et al.* Appellants.

*Opinion filed December 22, 1921.*

1. TAXES—*when school board may make levy for building purposes in addition to sum authorized by vote.* As a school board may use its discretion as to the character of building which it proposes to build, it may make a levy for building purposes in addition to the sum authorized by vote to be raised by sale of bonds for building the school house if the additional sum is necessary to build the kind of building the board has determined upon, provided there is nothing in the board's resolution, in the election notice or in the proposition voted upon which limits the cost of the building to the amount voted for.

2. SAME—*validity of levy is determined as of time it is made.* The validity of a levy of school taxes is to be determined as of the time it is made and not by the events that happen thereafter to defeat the intention of the school board or the directors that made the levy.

3. SCHOOLS—*cost of school building need not be submitted to a vote.* It is not necessary to submit the cost of a school building to a vote of the people in the district, and, although the district has issued bonds for an amount near its constitutional limit of indebtedness, the school board may afterwards levy a tax for building purposes to raise money to complete the building if the constitutional limitation is not exceeded.

4. SAME—*school board must make levy sufficient to pay bonds and interest as they fall due.* Under section 12 of article 9 of the constitution a school board is bound to make a levy sufficient to pay bonds and interest authorized by vote for building purposes as the same fall due in any year; and as this provision of the constitution is self-executing, this duty may be enforced by *mandamus* even though a levy to satisfy the indebtedness will exceed the statutory limit.

5. SAME—*remedy for intentional diversion of funds levied for building purposes must be sought in equity.* On application by the county collector for judgment for delinquent taxes, a claim that the levy of a school tax for building purposes was made with the intention of paying out of such fund the expense of carrying children to school raises a question of diversion of funds for improper purposes, the remedy for which is in equity.

APPEAL from the County Court of Hancock county; the Hon. WARREN H. ORR, Judge, presiding.

SCOFIELD, CALIFF & BELL, and HARTZELL, CAVANAGH, MARTIN & HARTZELL, for appellants.

LEE SIEBENBORN, State's Attorney, (O'HARRAS, WOOD & WALKER, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellants, Larkin Scott and thirty-three other land owners of Community Consolidated School District No. 306, filed their objections in the county court of Hancock county to the school taxes levied in said school district in the year 1920 and for which delinquent taxes the county collector was asking judgment. Under a stipulation all the objections were consolidated and tried as one case. On the hearing the court gave judgment for the taxes against the lands of appellants and entered an order of sale for the taxes, costs, etc.

Community Consolidated School District No. 306 was organized as a school district in the early part of 1920 out of the territory of the old districts Nos. 176, 184, 185, 187 and 188, in said county. All of the old districts except district No. 188 were rural districts, each having a one-story one-room frame school house. District No. 188 had a school house of three rooms and a hall, located in the town of Denver, which has a population of about 225. At the close of school in the spring of 1920 none of said school districts had any outstanding debts for bonds or other indebtedness. The five old districts had to their credit in the hands of their treasurers near $4400 at the time district No. 306 made its levy hereinafter noted.

The board of education of Community Consolidated District No. 306 after it had organized held its first meet-

ing on May 28, 1920, at which it determined to conduct school during the year 1920-21 in the school buildings in the old districts as the board had no school building and it would be impossible to complete the new school building before the commencement of school in the fall. Committees were appointed to look for locations for the intermediate grades of the school and for the employment of teachers, and also a committee on supplies. At a meeting of the board on June 1, 1920, the question of issuing bonds was discussed but no definite action was taken thereon. At the meeting on June 14, 1920, there was a petition presented to the board by the required number of legal voters asking that it call an election to vote on the propositions to locate a school house site, to purchase a school house site and to build a school house. The board thereupon adopted a resolution to the effect that the petition was signed by the legal number of voters and was in proper form; that it would require not less than the sum of $40,000 to purchase a suitable school house site and to build a suitable community consolidated school house in the district; that it would be necessary to borrow money for said purposes and to issue the bonds of the district therefor; that it is for the best interests of the district that such bonds be dated July 1, 1920, and that they bear interest at the rate of six per cent, payable July 1, 1921, and semi-annually thereafter. The resolution also declared that the bonds should become due in numerical order, $1000 of which to become due in each of the years from 1925 to 1928, both inclusive; $2000 to become due in each of the years 1929 to 1932, both inclusive; $3000 to be due in each of the years 1933 to 1936, both inclusive; and $4000 thereof to become due in each of the years 1937 to 1940, both inclusive. The resolution contained a preamble reciting that the board had made an estimate of the amount required to purchase a suitable school house site and to build a suitable school house for the district and had found and determined that the amount so re-

quired is $40,000. The resolution also stated a certain acre
and one-half of land should be submitted to the voters as
a proposed site at an election and described it; that the
propositions to locate a school house site, to purchase the
same, to build a school house and to authorize the board
to issue bonds of the district in the sum of $40,000, pay-
able as above indicated, should be submitted at a special
election, which by the resolution was set for Saturday, June
26, 1920, at a place therein named, and that notice of such
election should be given. The notice of the election was
to the effect that such election would be held at the time
and place mentioned, for the purpose of voting upon the
propositions to locate a school house site in and for said
district; to authorize the board of education of said dis-
trict to purchase a school house site for the district; to
authorize the board of education of said district to build
a community consolidated school house on a site to be se-
lected in and for the district; to authorize the board of
education of said district to issue the bonds of the district
in the amount of $40,000, specifying the dates on which
the bonds should mature, as set forth in the resolution.
The notice also suggested as a proper site for the school
house the one that the board had selected, and stated, in
substance, that the voter might vote on that site or on any
other that he might describe in the blank space on the bal-
lot. The ballots were prepared for the voters' use at the
election in accordance with the resolution. The election
was held in accordance with the resolution and notice. The
board met June 28, 1920, and canvassed the vote, the re-
sult of which showed that the propositions to build the
school house, to issue bonds, to purchase a site for the
school house and to build a school house were all carried,
and the site selected by the board was ratified by the vot-
ers. The board at this meeting declared that in accordance
with the result of the election it would purchase the school

house site, build the school house and issue the bonds for the district in accordance with the vote. The committee on building was directed to look after digging a well at the present school house site and repair the rooms for school.

At the meeting of the board July 31, 1920, it was voted that a tax of $8000 be levied for educational purposes and $8000 for building purposes for the year 1920, and the proper certificate was made and filed as required by the statute. The total assessed value of the property within the school district was $819,098. The rate of levy was one dollar per $100 for building purposes and one dollar for educational purposes. At the time this levy was made the board did not expect that any of the money of the old districts would be available for the use of district No. 306, as the treasurers of those districts were not in a position to, and had indicated that they would not, pay warrants drawn on them except by the old districts.

Previous to the time of the levy, July 8, 1920, one of the objectors herein filed a bill for injunction in the circuit court of said county seeking to enjoin the board from exercising any powers or privileges of such board, from making a certificate of levy for taxes in the school district and from purchasing a site or issuing bonds. A demurrer to the bill was filed October 19, 1920, which bill is still pending on demurrer. At the October term, 1920, of the circuit court the People of the State of Illinois, on the relation of two of the objectors herein, filed their petition for leave to file an information in the nature of *quo warranto* to determine the legality of the organization of Community Consolidated School District No. 306 and the right of the members of the board of education to hold their office, and that petition is still pending and undetermined. Prior to the levy of the taxes for the year 1920 the board of education was informed by its attorney that it would not be safe to build the school house until the litigation in the circuit court had been settled, and therefore the board made

no further effort to build a school house or sell the bonds, as it could not sell the bonds while the litigation was pending.

The treasurer of the consolidated board paid out upon its order for conducting schools in districts Nos. 188 and 187, $6003.86, all of which, except about $800 or $1000, was paid for teaching, the latter sums being paid out of the building fund for digging a well, raising seats, cleaning school house in No. 187, improving the school house in No. 188 by changing a hall into a room, adding new windows, etc. No school was conducted in districts Nos. 185 and 186, the school children in those districts attending other schools in the new district. District No. 176 employed teachers and conducted school in its own district and paid out therefor during the school year $827.79. Consolidated district No. 306 received during the year $2569.99 from district No. 188 and paid it out for conducting school in that district and in district No. 187. It received no other moneys from the other districts.

The record evidence made by the consolidated board shows conclusively that it was authorized by vote of the people of the district to purchase a school house site, build a school house and to issue bonds of the school district in the sum of $40,000, and that the board determined at its meeting to canvass the vote that it would purchase the site and build a school house. The oral evidence further discloses that at the time it made the levy the board intended to purchase the school house site and build a school house as soon as it could do so after the litigation in the circuit court had been settled, and that it expected that this litigation would be settled both in the circuit court and in this court by December, 1920, or February, 1921, and that the board could then, and would, sell the bonds and begin the building of a school house some time in the spring of 1921. The litigation was not determined according to expectations, and furnishes a sufficient reason for the fact that the board has not sold the bonds or begun the new building or pur-

chased the site. The board was well advised by its attorneys that it could not afford to incur personal risks by carrying out the intended purposes aforesaid.

The principal objections to the levy of the $8000 for building purposes, so far as they have been argued, are based on the ground that the consolidated board, as shown by the oral evidence, intended a large part of this levy as a supplementary or additional levy to the $40,000 to be raised by the sale of the bonds for building the school house, and that the board had no right to supplement this levy for this purpose because it was limited to the sum of $40,000 voted by the people for the building of the school house. As we view this record, the determination of the question whether or not the board of education was limited in the purchase of the school site and in the building of the school house to the sum of $40,000 voted by the people goes a long way to the settling of all the questions raised by the objections of appellants to the school levy.

Is the school board, under the facts in this record, limited to $40,000 for the purposes of purchasing a site and building thereon? It is well established by the decisions of this court that unless the school board has been limited by the vote of the people it has the right to use its own discretion as to the character of the building to be built, and that in its levy for building purposes it has the right to levy sums in addition to the amount voted to pay for the building if such additional sums should be required to build the character of building that it has determined the needs of the district demand. We do not find in this record any sufficient evidence to substantiate the claim of appellants that the board of education has limited itself or that the people by their vote have limited it in the amount that should be expended for the site and the building. The determination of the board by its resolution was that it would require *not less* than $40,000 for such purposes. There was nothing in the election notice or in the propositions voted upon

by the people that indicated in any way that only the sum of $40,000 was to be used or spent for such purposes. There is no oral evidence in the record that any voter who voted at that election had such an understanding, or any other understanding except what was plainly expressed in the election notice and in the propositions on the ballot voted by the people. The only ground for this claim of the appellants is that in the preamble of the resolution the board had made an estimate as to the amount that would be required and stated that amount to be $40,000. The testimony clearly shows that it was a mere estimate by the members among themselves and apparently without any previous inquiry as to what the building would cost, of carpenters or builders who had made figures for them. In fact, the size or character of the building that the board contemplated building, if such was discussed, nowhere appears in the record. That the board did not intend to bind itself by such a preliminary and uncertain estimate is clearly shown by the fact that it afterwards in the resolution declared that it would require not less than said sum. In other words, the determination of the board at that time, as shown by the resolution, was that the building that it had in mind would in no event cost less than $40,000, and that is what the resolution declared, and the people in voting that sum for bonds to build a school house and for purchasing a school house site made no limitation or qualification whatever.

It has been many times held by this court, that although a school district has issued bonds for an amount near its constitutional limit of indebtedness the school board may afterwards levy a tax for building purposes to raise money to complete the building if the constitutional limitation is not exceeded. (*People* v. *Chicago and Northwestern Railway Co.* 186 Ill. 139; *People* v. *Peoria and Eastern Railway Co.* 216 id. 221; *People* v. *St. Louis, Alton and Terre Haute Railroad Co.* 230 id. 61; *St. Louis, Alton and Terre*

*Haute Railroad Co.* v. *People,* 224 id. 155; *People* v. *Martin,* 283 id. 380.) It is said in a number of the cases just cited that it is not necessary to submit the cost of a building to a vote of the people, and this is in accordance with the provisions of the School law. The decisions all hold that the board of education or the school directors are only limited in the amount to be expended for a building when the vote of the people limits them. There is no such limitation in this case.

It is also argued by appellants that the school board in question did not have in contemplation at the time of the levy the actual building of a school house, but was only intending to accumulate money by the levy to build a school house at some time in the future, without any definite idea as to when it would build or as to how much the building would cost. This contention is not supported by the record. It appears positively by the record that the school board had made definite inquiries as to what amount would be required to build the school house it had in mind and had obtained information thereon from two different sources, and that the intention was, as already stated, to obtain plans and specifications and build the school house when the circuit court litigation was settled.

Along with this claim is the further claim of appellants that there were no bonds issued by the school board or intended to be issued by it within the school year of 1920, and that therefore no part of this levy was legitimate for the payment of bonds or interest thereon. The record does not sustain this claim of appellants, and we have already recited enough to show that the record is against such claim. The bonds were to bear date of July 1, 1920, by express provision of the resolution of the board and as voted by the people, and $2400 of interest on these bonds would have fallen due July 1, 1921, and $1200 more on January 1, 1922. The validity of a levy is to be determined as of the time it is made and not by events that happen there-

after to defeat the intention of the board or the directors that made the levy. It was the positive duty of this school district, under section 12 of article 9 of the constitution, to make a levy for building purposes sufficient to pay the $3600 interest to fall due on the proposed bonds in July, 1921, and in January, 1922. No statute of the legislature can override the positive provisions of this section of the constitution making it the duty of a school board to make provision for the payment of its bonded indebtedness and interest as the same fall due. The board would be subject to *mandamus* proceedings if it should refuse to comply with such duty, and unless the school board in question had levied, as it says it intended to do, $3600 for the purpose of paying interest on the proposed bonds it would have had no money on hand to pay the interest in January, 1922, as a levy for 1921 would not put money into the treasury until long after that time. We have frequently held that the provisions of this section of the constitution are self-executing and that municipalities are bound thereby, notwithstanding the fact that a levy to satisfy such indebtedness will exceed the statutory limit fixed by the legislature.

What we have thus far said makes it unnecessary for us to discuss the further reasons urged by appellants as to the illegality of the levy for building purposes, as under no view of the case is it in excess of the actual needs of the district or in excess of any constitutional or statutory rate or limitation, so far as this record shows.

As to the levy for educational purposes little else need be said. The record evidence does not show that it was so excessive as to be considered fraudulent as to appellants or the other tax-payers in the district. This levy was for only $8000. The funds in the hands of the old treasurers were not so kept that it could be determined what part of the funds of the old district were held for building purposes, if any, and how much for educational purposes. School district No. 176 spent nearly $900 in employing its teachers

and conducting its school,—a situation which the board was powerless to remedy owing to the action of some of the objectors. The board did not know and could not determine whether any of the funds in the hands of the old districts would be available for its use when it made the levy. District No. 176 and this board paid out nearly $7000 for educational and building purposes in the district for the year 1920. The consolidated board contemplated purchasing carriages to convey certain school children to the school, which appellants have estimated from the evidence in the record would cost not less than $3000. Appellants contend, too, that these carriages could properly be paid for only out of the educational fund, and we are inclined to agree with them, although we are not deciding that question as it is not necessary. No contention is made that this expense is one that the board has no power to incur. Considering the levy at the time it was made, as we must, there is no basis in the record for the claim that the levy was intentionally excessive or so excessive as to be deemed fraudulent as to appellants. We must therefore sustain this levy as one that is legal and binding on the residents of the district.

It is contended by appellants that the board of education had intended to pay the expense of carrying the school children out of the building fund, and that such expense is not legally chargeable to the building fund. It was not incurred or paid out of either fund. The record does not support the conclusion that the levy for building purposes was to include this expense at the time the levy was made. The payment of this expense out of the building fund, or the intended payment thereof out of such fund, can only be considered as an intentional diversion of such fund for improper purposes. Such an intentional diversion of the fund cannot be obviated or reached by the objections in this case, as the remedy is in equity and no specific objections were made. *People* v. *Bates,* 266 Ill. 55.

The conclusions that we have already reached make it unnecessary to further consider in detail the arguments and contentions of appellants against the legality of the levy of the school board, and for the reasons given the judgment of the county court is affirmed.

*Judgment affirmed.*