'I HE PEOPLE *ex rel.* John L. Toman, County Collector, Appellee, *vs.* THE CENTRAL PLAZA HOTEL CORPORATION, Appellant.

*Opinion filed December 16, 1940.*

ADELBERT BROWN, and ROBERT N. HOLT, for appellant.

THOMAS J. COURTNEY, State's Attorney, ERNST BUEH-LER, RICHARD S. FOLSOM, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (MARSHALL V. KEARNEY, LAW-RENCE J. FENLON, EDMOND P. MOLONEY, JOSEPH B. FLEMING, and THOMAS M. THOMAS, of counsel,) for appellee.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Appellant, the Central Plaza Hotel Corporation, objected to the Chicago Sanitary District bond and interest bond levy for the year 1937 amounting to 3 cents out of a total rate of 64 cents per $100 of assessed valuation, and a levy for the year 1937 of the Chicago board of Education bond and interest fund of 2 cents. The objection to the sanitary district levy was overruled. The objection to the board of education levy was sustained to the extent of 1 cent instead of 2 cents, as claimed by the objector.

The appeal is taken direct to this court as the revenue is involved.

## The Chicago Sanitary District Levy.

The specific amount objected to is $704,500.01 of the 1937 appropriation and levy of the Chicago Sanitary District for bond maturities and interest of the district's refunding bonds, which appellant claims were illegally issued.

In 1935, the legislature authorized a refunding of all outstanding Chicago Sanitary District bonds, and such a bond ordinance was adopted and refunding bonds issued, which took the place of and superseded all bonds of the sanitary district previously issued and outstanding. The sanitary district divided the refunding bonds into a series "A" and series "B." Series "A" refunded the installments of principal and interest on the superseded bonds which had matured since January, 1930, and that would become due before the end of the year 1935. These maturities amounted to $29,486,000. Series "B" represented the installments of principal on the superseded bonds which would not mature until after 1935. Only series "A" bonds are involved in this suit.

Series "A" refunding bonds were issued in the amount of $20,718,890, the amount of principal and interest claimed by the sanitary district to be unpaid and in default after the credit for $8,767,110 of moneys collected from taxes had been applied. The objectors claim that $16,910,736 of taxes applicable to bond payments and interest had actually been collected on sanitary district bonds from 1930 to 1935, which, if it had all been applied, would have left the amount to be refunded at $12,575,264, or $8,143,626 less than was actually refunded.

The facts are as follows: Bonds and interest for the year 1928 of the sanitary district in the sum of $12,059,855 became due; tax collections were not sufficient to pay this sum, but it was financed by the sale of 1928 bond and in-

terest tax anticipation warrants in the sum of $8,305,000, and by cash advanced by the corporate fund and the construction bond fund of the sanitary district in the total sum of $4,770,640, thus keeping the 1928 bonds from being in default. During the year 1929, sanitary district bonds and interest in the sum of $16,292,230.25 became due and payable, and these maturities were paid by realizing from the sale of 1929 bond and interest tax anticipation warrants the sum of $9,128,887.50, from the proceeds of sale of 1930 bond and interest tax anticipation warrants the sum of $7,144,700, and from bond and interest cash on hand $18,642.75. It thus appears that all maturities for 1928 and 1929 were paid when the refunding ordinance became effective, but that $7,144,700 of the taxes levied to pay 1930 bond maturities and interest had been anticipated and applied upon 1929 bond maturities. The balance of the claimed unauthorized refunding bonds is made up by the amounts borrowed from and remaining unpaid to other funds.

The contention made by appellant is that the money realized from the taxes of 1930 was diverted when it was used, in part, to pay bonds maturing in 1929, and that, therefore, the sum thus claimed to have been diverted should be considered as being applicable to bonds maturing in 1930, to ascertain the amount that could properly be refunded by the new bonds issued under the ordinance. The tax levy in this case involves the amount to be raised for paying maturities and interest on series "A" refunding bonds, which appellant claims should have been issued in amount of $12,575,264 instead of $20,718,890.

The point is made that the transfer of the money realized from the sale of 1930 tax anticipation warrants to pay 1929 bond maturities was an illegal diversion of tax funds from the purpose for which they were levied. The same claim is made with respect to amounts transferred from other funds for the same purpose.

A distinction has been made between a temporary borrowing from a fund and a permanent diversion of a tax fund. In *Gates* v. *Sweitzer,* 347 Ill. 353, the court said: "Municipal officers have no right to divert moneys from one fund to another and different fund for which it was not appropriated. But the word 'divert' is used in the sense of turning such fund permanently from its purpose or the final appropriation of it to some other use. If, as counsel for appellees argue, the commissioners had a right to, and did, temporarily borrow sufficient idle bond funds or other funds for the benefit of a fund having a stated and sufficient income to repay the sum borrowed, as the bond fund had, and with the intention that it shall be so repaid, such is not a diversion of funds, for the fund from which the money is taken holds the credit against bond interest and principal fund and is not depleted."

For 1929 and succeeding years, sanitary district bonds were maturing each year, for the payment of which, in accordance with section 12 of article 9 of the constitution, a direct annual tax, sufficient to pay the interest and principal as it became due, was required to be levied. In 1929 and 1930, there was a delay in extending the taxes owing to the fact the quadrennial reassessment of real estate was not completed in time to ascertain the rate. The bond and interest payment for the year 1929 was over $16,000,000, for the payment of which a direct annual tax had been levied. The anticipation from these taxes for the payment of bonds and interest was slightly over $9,000,000. The advance from the 1930 taxes was $7,134,700. There remained a levy for taxes, not anticipated for the year 1929, sufficient, when collected, to pay the advance from the 1930 taxes, and the record shows that from 1931 up to the present time, over $15,000,000 of such taxes have been collected.

Appellant's position as a taxpayer has not been changed by the action of the trustees of the sanitary district. The

trustees prevented the 1929 bonds from going into default by borrowing from the 1930 bond fund, but if it had not advanced the money realized from the sale of 1930 tax anticipation warrants, the 1929 bonds would have been in default to the extent of the advances made, and the total sum for which series "A" bonds would necessarily be issued for refunding purposes, would be the same as that actually refunded, except for the possible difference in the amount of interest that might be paid on bonds or tax anticipation warrants.

When we take into consideration that in 1930 it was impossible for the tax authorities to anticipate the chaotic economic situation which would later result from depression, uncollected taxes and the delay incurred in the assessment of real estate, we cannot say that when the trustees considered it good business judgment to keep bonds from being defaulted by taking from the 1930 funds money to accomplish this purpose, that it was more than a temporary advance to be repaid as soon as the money available from 1929 collections came in. Their action at that time cannot be characterized by what happened in succeeding years.

We do not see that the refunding of the bonds due between 1930 and 1935 changes the legal situation, but it should be examined as though the original issues were still in effect. The principle involved has been decided by this court heretofore. In *Gates* v. *Sweitzer, supra,* a bill in equity was filed to enjoin the county clerk from extending taxes to pay a deficit levy for Chicago park bonds. A demurrer was filed to the bill. The plaintiffs claimed the bill showed that all of the bonds and interest described in the levy had been paid; that the demurrer admitted such payment with a presumption that they were paid out of the funds levied for the specific purpose of paying them, and that, therefore, they could not levy a second tax to pay for an object for which a tax had already been col-

lected. The court, in disposing of the contention, assumed that what plaintiff claimed was true, but held, as pointed out above, that the right to temporarily borrow funds made plaintiff's complaint demurrable because the bonds could be legally paid either from taxes levied for that purpose or from money temporarily borrowed from other funds and applied to that purpose, and that, therefore, a deficiency appropriation and levy was good.

In *People* v. *New York Central Railroad Co.* 355 Ill. 80, objection was made to a deficiency levy for the park tax of 1929 because, it was contended, that levies for park bonds of 1927 and prior years had been collected, and, therefore, under the law, should be applied solely to the payment of the maturities due during the year for which tax collections were made. The opposition, however, contended that payment of bonds and interest maturing in 1927 out of funds other than taxes collected for that specific purpose, did not invalidate the levy of a later year for deficits in collections for the same purpose, and was sustained by the court. In sustaining the deficit levy this court said · "The appellant in this case owed a duty to restore the funds which had temporarily been diverted to the payment of the bonds and interest in question, and was authorized to make a levy to restore such borrowed funds under the facts in this case."

The case of *People* v. *Westminster Building Corp.* 361 Ill. 153, involved a deficit levy in 1933 to make up for a shortage of tax collections to pay sanitary district bonds due in 1931. The sanitary district had authorized bonds payable at different times during the years preceding and including 1934, but had not yet actually issued the bonds maturing in 1934. Out of the levy for 1931 the sanitary district board sold tax anticipation warrants and paid bonds due in 1930 to preserve the credit of the sanitary district, and when the 1931 taxes were collected they were applied,

part to the retirement of the tax anticipation warrants, and part to the maturing bonds and interest, and went into default for a part of the 1931 bonds. In overruling the objections, the court followed the case of *Gates* v. *Sweitzer, supra,* and held that there was not an unlawful diversion of the funds in applying money from the sale of 1931 tax anticipation warrants in paying maturities of 1930 bonds.

We do not think the situation is changed by the Refunding act. (Laws of 1935, p. 538.) The constitutional requirement to levy taxes to pay principal and interest of bond indebtedness still existed although the debt was represented by new bonds. The deficit for 1930 was still outstanding because of the non-payment of the temporary loan advanced to pay the 1929 maturities of the original bond issue, and the corporate authorities had power to levy taxes to make up this shortage. The Refunding statute provides, in section 6, that levies or taxes to pay principal and interest on the refunding bonds shall continue in the same manner as before refunding, but that all uncollected assets or taxes which would otherwise have been paid upon the original bonds shall be used for the purpose of retiring the new bonds. These collections, when made and applied, will repay the advances, which through the refunding operation are now represented in series "A," and taxes levied before issuing the refunding bonds but collected afterwards, will be applied in retiring refunding bonds, the proceeds of which discharged the temporary advance made from the taxes of 1930 and other years.

The principles announced in the *Gates case,* and applied to a similar situation in the *Westminster case,* must apply here. We have discussed the case only as it applies to temporary loans through the issuance of tax anticipation warrants, but the principle is the same with reference to repayment of the other funds from which money was temporarily borrowed to pay the 1929 bond maturities. There

was no error in overruling the appellant's objections to the sanitary district bond and interest levy.

### Board of Education Bond and Interest Levy.

The board of education, for the year 1937, appropriated and levied for bond and interest requirements the sum of $2,836,020, and for loss and cost, abatements, etc., $315,113.33, making a total levy of $3,151,133.33. One of the items of this levy was the "bond issue (6) 1937 Refunding: Principal $100,000; interest $79,500; loss and cost, abatements and deferred collections $19,944.44, a total of $199,444.44." By resolution, the board of education abated $190,000 of this item from the 1937 tax levy. There was a similar item in the 1938 tax levy, and an abatement from it of a like amount. However, the county clerk, before extending the tax for all bond and interest purposes for 1937, deducted $190,000, plus $19,444.44 loss and cost, upon each resolution, thereby deducting from the 1937 tax levy for all such purposes the abatements for both years 1937 and 1938, amounting to a total of $419,888.88, or an over-abatement of $220,444.

Three other and different items of the tax levy for the bond and interest fund aggregating $381,638.38, were held illegal and objections to them sustained, because they were appropriations and levies issued to refund tax anticipation warrants. These illegal items alone rendered the tax rate excessive to the extent of 2 cents on the $100. The county court, however, in entering judgment, sustained objections to items of the bond and interest tax aggregating $381,638.38, but also found that the total bond and interest extension was illegal only to the extent of $161,194.38. It is claimed this last amount was ascertained by deducting the excess abatements of $220,444 from the items to which objections were sustained, which left the amount by which the total tax levy was reduced $161,194.38, which reduced

the rate of taxation for this purpose to 1 cent instead of 2 cents, as claimed.

The only point raised in the objections to the board of education bond and interest levy is whether the court had authority to deduct from the admittedly illegal levy of $381,638 the erroneous excess abatements made by the county clerk in the sum of $220,444. A levy of taxes is made by the body vested by law with the power and duty of ascertaining and fixing the sum of money necessary for its lawful purposes. (*People v. Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* 316 Ill. 410; *People* v. *Chicago and Eastern Illinois Railroad Co.* 313 id. 361.) The power to levy a tax is not a judicial function, and cannot be exercised by the courts. (*School Directors* v. *School Directors,* 232 Ill. 322; *People* v. *Commonwealth Edison Co.* 367 id. 260.) The validity of a tax is determined at the time of its levy. (*People* v. *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co. supra; People* v. *Scott,* 300 Ill. 290.) If a deficiency arises from the levy of an insufficient tax, or by reason of other errors, the county clerk has no authority to include the amount of deficit in calculating the amount to be extended. *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 365 Ill. 443.

Applying these well-settled principles to the facts, the illegal items in the levy, amounting to $381,638.38 should have been deducted from the levy, as extended by the county clerk, ($2,731,244.89,) which would leave the valid levy $2,349,606.62. Appellee's computation, however, omits consideration of the amount extended by the county clerk, but starts with the total amount of the levy before abatements, $3,151,133.33, and deducts therefrom the illegal items $381,638.38 and abatements authorized, ($199,444.44,) leaving the amount appellee claims should be extended $2,570,050.51, which is $161,194.38 less than

the amount extended by the county clerk. In this computation the excessive abatements of $220,444 do not appear, and it is singular that the amount of illegal taxes, by this method, is reduced by the exact amount of the excessive abatements. This computation was adopted by the court, but the mistake was made in assuming that the error of the county clerk in deducting excessive abatements in extending the tax, could be rectified and a proper extension made, without requiring appellant to pay any part of the illegal tax items. If the clerk had entered the correct amount of abatements, the total taxes extended would have been $2,951,688.89, of which the illegal items $381,638.38 were approximately twelve per cent. The county clerk, however, extended $2,731,244.89 for bond and interest items, and the county court sustained objections of appellant only to the extent of $161,194.38, or approximately six per cent of the total levy. The net amount of taxes extended for bond and interest requirements by both computations is the same, but in reaching this result appellant will be compelled to pay on levies illegal to the extent of $220,444. This is not the result that would have been reached had the county clerk properly carried out his ministerial duties as asserted by appellee. The objections should have been sustained to the amount claimed by appellant.

The judgment of the county court as to the sanitary district bond and interest levy is affirmed. The judgment of the county court as to the board of education bond and interest levy is reversed and the cause remanded, with directions to sustain the objection made by appellant.

*Affirmed, in part, reversed, in part, and remanded.*