(No. 31871.

THE PEOPLE *ex rel.* JOHN B. BRENZA, County Collector, Appellee, *vs.* ALLAN T. GILBERT, Appellant.

*Opinion filed March 22, 1951.*

ADELBERT BROWN, of Chicago, for appellant.

JOHN S. BOYLE, State's Attorney, and RUSSELL W. ROOT, both of Chicago, (GORDON B. NASH, EDMOND P. MOLONEY, LAWRENCE J. FENLON, and JOSEPH H. O'CONNOR, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellant made certain objections to the Cook County collector's application for judgment and order of sale of certain real estate for nonpayment of taxes for the year 1946. The objections pertain to (1) an alleged excessive county levy for the Cook County bond and interest fund; (2) the county levy to pay illegal advances made by the working cash fund of the county; and (3) failing to properly itemize the appropriations for repairs and replacements for the Chicago Sanitary District. The county court overruled all objections. We will consider them in their relative order.

The first objection makes the claim that the Cook County levy for bond and interest requirements was excessive. The foundation for this claim is based upon section 17-10 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1947, chap. 24, par. 17-10,) which provides that whenever re-

funding bonds are purchased or redeemed and cancelled, the taxes thereafter to be extended for payment of the principal and interest on the remainder of the issue shall be reduced in an amount equal to the principal and interest that would have thereafter accrued upon the refunding bonds so cancelled.

In 1936, certain indebtedness of Cook County was refunded, and over $47,000,000 in bonds was authorized to be retired over a period of twenty years. The refunding ordinance provided after the second to the thirteenth year for a yearly levy of $1,925,676.40 for interest and $2,450,803.60 for principal, or a total of $4,377,480, for the purpose of retiring principal and interest on this refunding bond issue. For the remainder of the term the payments were reduced to meet the requirements of principal and interest as they might be lowered by previous payments. The bond ordinance also provided that the county had an option to call bonds in given amounts during each year, and in 1945 the principal of said refunding bonds was called for cancellation in the amount of $13,523,410, which with previous payments upon principal left a balance unpaid at that time of $5,126,900.

Each year when the levy of taxes was made for the payment of the principal and interest the amounts set out in the refunding ordinance of 1936, *viz.*, $2,450,803.60 for principal and $1,925,676.40 for interest, would be made by the county clerk, except for abatements and adjustments thereafter made, reducing the same to meet the exigencies of each year. Thus, in 1946, when the county levy was made for the bonds and interest payments the amounts fixed in the refunding ordinance of 1936 were reduced by the following amounts: the sum of $702,851.10, which applied to the 1945 bond and interest charge; and in February, 1947, by an abatement ordinance, in the sum of $1,943,434, the amount unneccessary to collect because of refunding bonds previously canceled or retired, and the interest which

said retired bonds would have required had they remained unpaid.

The amount left in the levy for county bond and interest for 1946 was $1,731,195, to which was added 11.2 per cent loss and cost, or $190,431, and the total extended for this purpose was, therefore, $1,921,626. Appellant claims that the amounts that should have been extended by this levy for county refunding bond and interest was $544,647.92, made up as follows: Interest, $224,075; principal installments, $266,598.80; loss and cost, $53,974.12. Appellant reaches this result by assuming that the unpaid principal of bonds in the amount of $5,126,900 should be prorated over the remaining seven years of the term for which they were issued, and we take it this computation assumes that an equal amount of principal would be paid each year and the interest proportionately reduced as principal sums were paid, without any consideration given to the right to cancel and redeem bonds. Appellant assumes that the law requires a certain percentage of principal of the bonds should be paid each year, and therefore the unpaid amount of principal spread over the whole remaining term proportionately. It is the contention of appellant that it is only by this method that the statute above referred to can be made effective.

The provision of the statute relied upon by appellant was enacted in 1941, but the law in effect at the time of the issuance of the bonds did not require a reduction as to principal, but only as to interest, for it then read: "Whenever any refunding bonds are so purchased and/or redeemed and cancelled, the taxes thereafter to be extended for payment of interest shall be reduced in an amount equal to the interest that would have thereafter accrued upon such refunding bonds so cancelled, * * *." (Laws of 1935, p. 538.) It was only in 1941 that the statute was amended requiring the extension of taxes to be reduced for both principal and interest paid upon refunding bonds, and we

believe that this change in the law is material to a proper consideration of the issues involved in this case.

The bond ordinance expressly incorporated the language of the 1935 law just above quoted, and also reserved the right to call and redeem a certain amount of said bonds yearly from 1937 to 1953, at which time they were all to be retired and cancelled. At the time this bond ordinance was adopted there was no requirement of statute that the levy should be reduced by the amount of the principal payments, but only by the amount of the interest payments that would have accrued upon retired or cancelled bonds. It is quite apparent that, if the full amounts provided in the bond ordinance were collected each year, a considerable sum would accumulate from that source over and above the amounts required to pay succeeding installments, and also from money available from uncollected taxes for previous years with which to discharge bonds prior to their due date. Undoubtedly, Cook County relied upon the fact there was no duty to reduce the levies required by the bond ordinance by the amount of principal paid, and should not be deprived of that right by subsequent legislation which might seriously jeopardize the provisions of the bond ordinance adopted in 1936.

While the case of *Friedman* v. *City of Chicago,* 374 Ill. 545, involved a controversy between an individual and the city, in which it was held that the amendments of section 89 of the Local Improvement Act allowing *pro rata* cancellation of bonds did not apply to bonds issued prior to the amendment, and is not precisely in point, still, it illustrates that statutes in the absence of express language will be given a prospective, and not a retrospective, construction. In that case the property owner could pay his assessment with a bond or voucher, which thereupon was cancelled. An amendment to the law after the assessment was levied permitted the amount thereof to be credited upon a bond reducing it *pro tanto,* but not requiring it to be wholly can-

celled. Upon the objection of the city it was held this amendment could not be applied to a local improvement authorized before its enactment.

We are of the opinion that the county in enacting the bond ordinance of 1936 had a right to assume that the provisions of the law with respect to reductions in annual levies for principal and interest would be controlled by the law as it existed in 1935, and we think this is shown not only by reciting the language of the 1935 statute in the resolution, but also in the fact that the county retained the option to cancel bonds during each successive year. The source of the funds, as well as the amounts of optional retirements, might have been quite different if the law of 1941 had been in force when said debt was refunded. It is also quite possible that applying the 1941 law would require changes in the fiscal management not required at the time the debts were refunded, the effect of which cannot now be anticipated.

Another reason appears why the position of appellant cannot be sustained. The statute provides that the taxes to be extended shall be reduced in an amount equal to the principal and interest that would have thereafter accrued upon the refunding bonds so cancelled. When we take into consideration that the payments specified by the refunding bond ordinance in the yearly amount of $4,337,480 were not fully extended for 1946, but only the sum of $1,921,626, it appears that the tax authorities have made reductions, which, so far as the evidence discloses, comply with the requirements of the law as it existed at the time the bond resolution was adopted. In other words, the appellant has wholly failed to establish by the evidence that there is any violation of the 1935 law, and we do not believe that the 1941 law is applicable. We hold, therefore, that appellant's first objection is untenable.

The second objection to the county levy relates to the advance from the working cash fund for corporate pur-

poses of Cook County to the county highway fund in the amount of $630,576.88. The levy includes an amount to repay this sum, and it is claimed that it is a void liability, and hence an improper subject for appropriation and levy. There is no question but that said sum was advanced from the working cash fund provided for the corporate purposes of the county to the county highway fund, but the appellee claims that this is a temporary loan, and not a diversion of public funds, and is not illegal, and that it is a proper debt to be repaid by taxation.

The provisions of the statute relating to the working cash fund for counties (Ill. Rev. Stat. 1947, chap. 34, pars. 110a to 110f incl.,) provide for the creation of a working cash fund, and by section 4 of this act (par. 110d,) provides that it shall be used only for the purposes set forth in this section, *viz.*, "to meet ordinary and necessary disbursements for salaries and other corporate purposes, may be transferred, * * * to the general corporate fund of the county and so disbursed therefrom in anticipation of the collection of any taxes lawfully levied for general purposes * * *." The corporate purpose fund is a different one from that for county highway purposes.

The statute relating to counties also provides (Ill. Rev. Stat. 1947, chap. 34, par. 64.7,) that the annual appropriation bill shall set forth an amount required to reimburse the working cash fund from the general corporate fund, pursuant to the statute. While there is no direct prohibition, it is clear that the working cash fund for corporate purposes was not intended to be used for the purpose of advancing funds to the county highway fund. The question presented is whether the transaction is such that will prevent a levy being made for the purpose of reimbursing the working cash fund for the money advanced.

Appellant has cited a number of cases which he contends render the transaction void. It is to be observed

that the cases cited are in the main those where the tax levied directly violated some constitutional or statutory prohibition. In the present case, the prohibition is indirect in that it specifies the purposes for which the working cash fund may be issued, and by plain inference provides it may not be used otherwise. The case of *Green* v. *Hutsonville Township High School Dist.* 356 Ill. 216, involved an attempt to validate a tax exceeding the constitutional debt limit, which is expressly prohibited by the constitution, and absolutely void. The case of *DeKam* v. *City of Streator,* 316 Ill. 123, involved the enforcement of a contract made with a city officer, which by the terms of the statute was rendered void. The case of *Newberry Library* v. *Board of Education,* 390 Ill. 48, involved the question of attempting to refund an obligation void under the constitution. All of these cases are invoked by appellant to show that the money could not be recovered, since the transaction was illegal and void. Other cases follow the same line.

On the other hand, the appellee cites a number of cases in which we have held that money from one fund may be temporarily loaned to another fund, without amounting to a diversion of corporate funds, and notable among this list of cases are: *Gates* v. *Sweitzer,* 347 Ill. 353; *People ex rel. McDonough* v. *New York Central Railroad Co.* 355 Ill. 80; *People ex rel. McDonough* v. *Atchison, Topeka and Santa Fe Railway Co.* 356 Ill. 251; *People ex rel. Toman* v. *Central Plaza Hotel Corp.* 375 Ill. 114; *Town of Thornton* v. *Winterhoff,* 406 Ill. 113. The substance of these cases is set out in the *Winterhoff case,* as follows: "In *Gates* v. *Sweitzer,* 347 Ill. 353, we said: 'Municipal officers have no right to divert moneys from one fund to another and different fund from which it was not appropriated. But the word "divert" is used in the sense of turning such fund permanently from its purpose or the final appropriation of it to some other use. If, as counsel for appellees argue, the commissioners had a right to, and did,

temporarily borrow sufficient idle bond funds or other funds for the benefit of a fund having a stated and sufficient income to repay the sum borrowed, as the bond fund had, and with the intention that it shall be so repaid, such is not a diversion of funds, for the fund from which the money is taken holds the credit against bond interest and principal fund and is not depleted.' We followed this case and approved the principle in *People ex rel. Toman v. Central Plaza Hotel Corp.* 375 Ill. 114."

In all of those cases there was no express authority to make the temporary loan, but it was regarded as enforcible as the exercise of sound business discretion upon the part of the municipal authorities, and it was held that even though the temporary loan discharged a bond indebtedness, still the amount paid did not amount to a discharge of the obligation, and the proper levy could be made which would reimburse the original fund from which the temporary loan had been made. We have also held in *People ex rel. Mc-Donough v. New York Central Railroad Co.* 355 Ill. 80, that when such a borrowing had been made it was the duty of the borrower to levy the amounts necessary to reimburse the fund.

The present case is different from those last cited in that there is at least an implied prohibition against using the working cash fund for anything except the purpose of financing the corporate fund of the county. We believe that this policy has been recognized by the General Assembly by the passage in 1947 of a special statute, authorizing the creation of a working cash fund for the county highway fund. (Ill. Rev. Stat. 1947, chap. 34, pars. 110f1 to 110f5 incl.) Although we believe the county commissioners exceeded their authority in making a loan from the working cash fund to the county highway fund, it is also apparent they have made the proper arrangements to repay the same out of the county highway tax, and in case of a failure to so pay could be compelled by a proper proceeding to

reimburse that fund, since we believe it is more an irregularity than an invalid act, as all of the funds of Cook County are controlled by county commissioners, who have the management of both funds.

If the objection of appellant should be sustained the unusual result would be that our judgment would result in a permanent diversion from the working cash fund instead of a temporary loan. While we do not approve the practice that is disclosed, we are more reluctant to follow the course that would result in a positive violation of law, when the facts disclose all steps have been taken to reimburse the fund. If the county had left the money in the working cash fund the debt of the highway fund would have remained unpaid, and would have been included in the present levy, but only under a different appropriation.

The objection to a levy should disclose that the taxpayer has been injured by what the authorities have done. In the present case the maxim of *damnum absque injuria* could appropriately apply, and especially in view of the fact that provision has now been made by the General Assembly for the financing of the county highway fund in the future from a cash working fund, the same as that of the county corporate fund. The question presented is somewhat new, but in view of the fact that appellant is not and cannot be damaged, we think the action of the county court in overruling the objection should be sustained.

The last objection pertains to the failure to itemize the Chicago Sanitary District appropriation for repairs and replacements. The statute pertaining to the Sanitary District appropriations, among other things, provides: "The budget for said district shall present a complete financial plan for the budget year. * * * Appropriations shall be arranged according to funds and also according to organization units. Such appropriations shall specify the objects and functions (activities) for which they are made and the

amount appropriated for each object or function (activity) * * *." Ill. Rev. Stat. 1945, chap. 42, par. 324m.

The item complained of is as follows: "Contractual Impersonal Service * * * Repair and replacement service * * * Channels, Ditches, Reservoirs and Docks, $365,250." It has been held in a number of cases that the requirement to itemize appropriations is mandatory, (*People ex rel. Schnipper* v. *Missouri Pacific Railroad Co.* 332 Ill. 53;) and that the failure to comply with such a statute makes the appropriation invalid, (*People ex rel. Fredenberger* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 314 Ill. 455;) and that this provision of the law is based upon the proposition that the taxpayer is entitled to know how his money is going to be used. (*People ex rel. Gill* v. *Schweitzer,* 366 Ill. 568.) We had held in the previous case of *People ex rel. Gill* v. *Diversey Hotel Corp.* 364 Ill. 298, that the itemization provision did not apply to the Sanitary District, but that case was announced in 1936, and thereafter the statute was amended, so as to provide as above stated. (Laws of 1943, p. 599.) The requirement of this statute is practically the same as those in the cases in which we held that the itemization was insufficient.

It would seem that repairing and replacing docks would be an entirely different thing from dredging or digging channels or reservoirs, and that each of these items should be specifically set out, as required by statute. In *People ex rel. Toman* v. *Sage,* 375 Ill. 411, we held that appropriations for ordinary expenses and those for capital investments must be separately set out, and so it would seem that cleaning a ditch would be in a different classification than building a dock. We think the itemization in this respect was insufficient, and that the county judge should have sustained the objection to the Sanitary District levy specified in this objection.

*Affirmed in part and reversed in part.*