*In re* APPLICATION OF EDWARD J. ROSEWELL, County Collector, for Judgment and Order of Sale Against Lands and Lots Returned Delinquent for the Year 1983 and Prior Years and for Judgment Determining the Correct Amount of Taxes Paid Under Protest (Charles Marotta, Objector-Appellant, v. Metropolitan Water Reclamation District, Respondent-Appellee).

First District (2nd Division)   No. 1—90—2583

Opinion filed July 14, 1992.—Rehearing denied October 6, 1992.

SCARIANO, J., dissenting.

Keck, Mahin & Cate, of Chicago (Thomas J. McNulty and Maria E. Stangel, of counsel), for appellant.

Allen S. Lavin, Michael G. Rosenberg, and James B. Murray, all of Chicago, for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Objector, Charles Marotta, appeals from an order of the circuit court dismissing his challenges to respondent's 1983 tax levies.

In December 1984, Marotta and several other taxpayers filed an action in the circuit court challenging the 1983 appropriation ordinances and tax levies of several governmental entities and seeking refunds of taxes alleged to be illegal and void. This is an appeal by Marotta from a circuit court ruling upholding the taxes levied by one of those entities, the Metropolitan Water Reclamation District of Greater Chicago (District).

The objections to the District's tax levies challenged the District's appropriations for the corporate fund levy, the calculation of the bond and interest fund levy and annuity and benefit fund levy, and the District's 4% reserve levy set up to cover uncollectible corporate fund and bond and interest fund taxes.

Prior to the hearing in this action, the parties entered into stipulations concerning most of the relevant facts. Attached to the stipulations as exhibits were copies of the District's comprehensive annual financial report for the year ended December 31, 1982; its comprehen-

sive annual financial report for the year ended December 31, 1983; and its 1983 budget.

After arguments, the trial court filed a memorandum opinion finding that the corporate fund levy was proper, that the method of calculating the bond and interest fund levy used by the county clerk could not be considered an abuse of discretion, that the annuity and benefit fund levy had been properly calculated, and that the reserve levy was valid.

In this appeal, we must determine whether the trial court properly upheld each of the levies in question.

### CORPORATE FUND LEVY

Marotta raises four separate challenges to the corporate fund levy: (1) the District appropriated $6,300,000 for expenditures it knew would not be made; (2) the District overestimated expenditures from the corporate fund by appropriating for expenditures to be made in later years; (3) the District underestimated the amount of the corporate fund surplus available for appropriation; and (4) $8,711,350 in appropriations made by the District for the corporate fund were vague, rendering them illegal and void.

### (1)

The 1983 District budget was adopted December 9, 1982, and amended December 16, 1982. The budget included appropriations for chlorination of effluent and for interest in the amount of $3,800,000 on tax anticipation notes to be issued in 1983.

On February 2, 1983, Public Act 82—1046 (Act) (Ill. Rev. Stat. 1983, ch. 42, par. 328b) went into effect. This Act authorized the District to increase its corporate working cash fund by the sale of long-term bonds. This eliminated the need for the sale of tax anticipation notes and the need for payment of $3,800,000 in interest on the notes.

On July 14, 1983, the Pollution Control Board granted the District a variance, allowing it to reduce the level of chlorination of effluent. This amounted to a savings to the District of $2,500,000 in chlorination costs.

In June 1984, the county clerk extended the tax levies for the 1983 budget. The levy for the corporate fund included the $3,800,000 for interest on tax anticipation notes and $2,500,000 in chlorination expenses. On appeal, Marotta argues that because these expenditures were no longer necessary, the District should have abated the levy by $6,300,000.

In arguing that the District acted improperly in allowing the $6,300,000 to be appropriated, Marotta relies on *People ex rel. Brenza v. Fleetwood* (1952), 413 Ill. 530, 109 N.E.2d 741. However, the facts in this case differ significantly from those in *Fleetwood.*

In *Fleetwood,* the objector successfully challenged the City of Chicago's 1948 budget appropriation of $35,000 for its library maintenance fund. The objector showed that, in the years 1943 to 1947, $23,000 was appropriated for machinery and equipment, $54,500 for motor vehicles, and $34,000 for furniture and fixtures. However, only $1,616.26 of the amount appropriated for furniture and fixtures actually was spent and none of the money appropriated for machinery, equipment, or motor vehicles was used for those purposes. The Illinois Supreme Court sustained the objection to the 1948 appropriation, holding that a tax levy greatly in excess of the amount required for a particular purpose, made with the intention of creating a surplus to be used for another purpose, is not legal. *Fleetwood,* 413 Ill. at 551.

In the present case, unlike *Fleetwood,* Marotta has not shown a practice in year after year of appropriating amounts that were not expended for the designated purpose. Rather, the facts here show that sometime after the 1983 budget was adopted, it became apparent that one of the appropriations would be unnecessary and another would be less than originally expected. This does not require a finding that the appropriations were illegal. The estimation of expenditures is a matter left to the sound discretion of the taxing authority and should not be disturbed by a reviewing court unless there is a clear abuse of discretion. (*People ex rel. Brenza v. Gebbie* (1955), 5 Ill. 2d 565, 126 N.E.2d 657.) Here, we find that the District did not abuse its discretion in allowing the $6,300,000 to be appropriated.

Marotta cites no authority in support of his contention that the District had a duty to abate the levies in question after it became apparent that the expenditures had become unnecessary, and it appears there is no requirement that the District do so. In *Fleetwood,* the supreme court stated that an objection is not established merely by a showing of a difference between the estimation and the result. The court added that, "[b]y necessity[,] the estimates required by statute demand some speculation, and it is only reasonable to expect some error." *Fleetwood,* 413 Ill. at 536-37.

(2)

In its 1983 budget, the District estimated its corporate fund expenditures at $148,653,000. During 1983, the District set aside $140,283,000 for goods and services, but the amount actually ex-

pended in 1983 totaled $130,340,000. The reason for the difference between the amount set aside and the amount spent is that the $140,283,000 included expenditures for goods and services contracted for in 1983 but not delivered until 1984 or later.

Marotta contends that the District's overestimation of expenses constitutes an abuse of discretion, while the District argues that it properly exercised its discretion in estimating its expenditures.

■ In arguing that the District abused its discretion, Marotta relies solely on the fact that there is a difference between the amount expended in 1983 and the amount appropriated. This is insufficient to establish an abuse of discretion.

The burden of showing that a taxing authority has abused its discretion in making a levy is on the person objecting to the levy. (*People ex rel. Bergan v. New York Central R.R. Co.* (1946), 392 Ill. 525, 64 N.E.2d 895; *People ex rel. Toman v. Edward Hines Lumber Co.* (1944), 385 Ill. 366, 52 N.E.2d 720.) Such abuse is not shown by the mere fact that the taxing authority has levied a tax in a sum greater than the figure required to balance the amount of budgeted income with the amount of budgeted appropriations, or even by the fact that the tax levied will increase the available surplus and leave a larger cash balance on hand at the end of the fiscal year than was on hand at the beginning of the year. *Bergan*, 392 Ill. at 534.

In arguing that there was no abuse of discretion, the District relies on section 5.8 of the Sanitary District Act (Ill. Rev. Stat. 1983, ch. 42, par. 324r). Section 5.8 provides in part:

"No contract shall hereafter be made, or expense or liability incurred by the said board of trustees, or any member or committee thereof, or by any person or persons, for or in its behalf *** unless an appropriation therefor shall have been previously made by said board in the manner aforesaid. No officer, head of a department, or commission shall, during a budget year, expend or contract to expend any money or incur any liability, or enter into any contract, which, by its terms, involves the expenditure of money for any purposes for which provision is made in the appropriation ordinance in excess of the amounts appropriated in said ordinance. Any contract, verbal, or written, made in violation of this section shall be null and void as to the district, and no moneys shall be paid thereon; provided, however, that nothing herein contained shall prevent the making of contracts for the lawful purposes of said district, the terms of which contracts may be for periods of more than one year, but any contract so made shall be executory only for the

amounts for which the said district is lawfully liable in succeeding budget years." Ill. Rev. Stat. 1983, ch. 42, par. 324r.

We find that this language supports the District's contention that it was required to include in its 1983 budget amounts for goods and services for which it contracted in that year, even though they were not delivered during the year.

(3)

In its 1983 appropriation ordinance, the District estimated the amount of corporate fund surplus available for appropriation in that year to be $16,082,360. The actual corporate fund balance at the end of 1982 was $27,467,000 under generally accepted accounting principles and $21,063,000 under a budgetary basis of accounting. Marotta contends that the District's underestimation of the corporate fund surplus constitutes an abuse of discretion.

■ As with the previous objection, the sole basis for the challenge to the District's action is the difference between its estimate and the actual amount available. As stated above, an objection is not established merely by showing that there is a difference between the estimate and the actual result. (Fleetwood, 413 Ill. at 536.) Thus, Marotta has failed to establish that the district's underestimation of the corporate fund surplus amounted to an abuse of discretion.

(4)

Marotta next challenges the District's estimate of approximately $8,711,350 of Corporate Fund appropriations. These include appropriations for items such as "Payment for Professional Services," "Reprographic Services," "Rental Charges," and "Buildings." Marotta claims that the District's appropriations for these items should be held illegal and void because they are vague and insufficiently itemized.

Section 5.3 of the Sanitary District Act provides that appropriations shall specify the objects and functions for which they are made and the amount appropriated for each object and function. (Ill. Rev. Stat. 1983, ch. 42, par. 324m.) This requirement is based on the proposition that the taxpayer is entitled to know how his money is going to be used (People ex rel. Gill v. Schweitzer (1937), 366 Ill. 568, 10 N.E.2d 337), and it has been held to be mandatory (People ex rel. Brenza v. Gilbert (1951), 409 Ill. 29, 97 N.E.2d 793; People ex rel. Frendenberger v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. (1924), 314 Ill. 455, 145 N.E. 727).

■ However, it also has been held that specification of each item of expense for which a levy is made is not required; a single general

purpose is sufficient to include every appropriate expenditure required, although there may be many items. (*People ex rel. Sweet v. Central Illinois Public Service Co.* (1971), 48 Ill. 2d 145, 268 N.E.2d 404.) In addition, the Illinois Municipal Code authorizes corporate authorities such as the District to make itemizations in its annual budget and appropriation ordinances using general designations such as personal services, contractual services, travel, commodities, equipment, permanent improvements, land, and contingencies. (Ill. Rev. Stat. 1983, ch. 24, par. 8—2—4.) The designations used by the District are substantially similar to those approved by the statute and, therefore, we find that the appropriations are not illegal or void because of vagueness.

BOND AND INTEREST FUND LEVY
ANNUITY AND BENEFIT FUND LEVY

Marotta argues that the county clerk improperly calculated the bond and interest fund and annuity and benefit fund levies. Marotta contends that in calculating the bond and interest fund levy, the county clerk was required by section 12 of the Revenue Sharing Act (Ill. Rev. Stat. 1983, ch. 85, par. 616) to give full credit to a bond interest abatement ordinance adopted November 3, 1983. According to Marotta, the method used by the county clerk to calculate the levy resulted in a credit of only 89.96% of the abatement. With respect to the annuity and benefit fund levy, Marotta contends that the county clerk again violated section 12 by failing to allow a credit for the receipt of replacement tax revenues.

The District responds to Marotta's contention that the bond and interest fund levy was calculated improperly by arguing that the trial court correctly concluded that the difference between the amount reached by using the method of calculation espoused by Marotta and the method actually used by the clerk was so small that it could not be considered an abuse of discretion. However, the question is not whether the method used constituted an abuse of discretion, but whether it was in violation of the statute. Accordingly, we find that the trial court erred in dismissing this objection without first determining whether the calculation was proper under the applicable law.

A similar finding is required with respect to the annuity and benefit fund levy. In response to Marotta's claim that this levy also was improperly calculated, the District argues that it followed the statute and that the levy was proper. As support for its position, the District relies on a computation sheet, included in its briefs before this court and the lower court, that purportedly shows the District's 1983 budg-

eted net levy for its annuity and benefit fund. However, this sheet was not included in the parties' stipulations, nor was it included in the hundreds of pages of documents attached thereto as exhibits. In addition, the District provides no explanation of how this information justifies the contested appropriation. In light of these facts, the trial court acted improperly in dismissing this objection.

### RESERVE LEVY

■ Marotta's only argument on this issue is that, to the extent that this court finds that any of the above discussed levies were incorrect, the *pro rata* proportion of the 4% levy for loss and costs also is invalid and should be refunded. Marotta's argument is based on the supreme court's finding in *Fleetwood* that the loss and costs estimates attributable to levies found to be illegal were void to the extent that they were based upon the illegal portion of the levies. *Fleetwood*, 413 Ill. at 554.

Here, however, we have not found that any of the challenged levies were illegal. Accordingly, there is no basis for Marotta's claim that the reserve levy for loss and costs is void.

### CONCLUSION

For the foregoing reasons, we sustain the trial court's dismissal of Marotta's challenges to the corporate fund and reserve levies. However, we reverse the dismissal of Marotta's challenges to the bond and interest fund and annuity and benefit fund levies and we remand the cause for further proceedings.

The judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

DiVITO, J., concurs.

JUSTICE SCARIANO, dissenting:

I respectfully dissent from most of the majority's holdings, for although the District has evidently succeeded thus far in the delicate political art of obtaining money from the taxpayer without disturbing the voter, I decline the offer to let the matter glide ever so blithely by this court.

The District's budgeting process takes place prior to the budget year, and the levy of the tax is generally made 18 months later; accordingly, as the majority indicate, the District's 1983 budget was

adopted on December 9, 1982, and amended December 16, 1982, and its 1983 tax levy was extended by the county clerk in June 1984. The corporate fund levy included the amount of $3,800,000 for interest expense to be paid on tax anticipation warrants, to which the taxpayer objected on the ground that the District knew more than one year prior to the extension of the levy that the General Assembly made it unnecessary that there be any need for the expenditure of those funds for the purpose stated by the District. Public Act 82—1046, which rendered the levy unnecessary, became effective February 2, 1983, only six weeks after the 1983 budget was passed.[1]

The Act amended section 9(b)[2] to authorize the District to augment its corporate working cash fund through the sale of long-term bonds which eliminated the need for the issuance of annual tax anticipation notes. Such working cash bonds were issued in March 1983, shortly after the effective date of Public Act 82—1046, which reduced by $3,800,000 the amount of funds actually expended by the District out of the corporate fund for 1983, a reduction attributable to the interest saved by the District's not having to mortgage its tax receipts.

Indeed, the reason offered to the General Assembly by its proponents for adopting the bill was the savings the District's taxpayers would realize thereby. As Representative Terzich stated to the House:

"I am sure that many of you have received a letter from the president of the sanitary district as well as the ... news article from the *Tribune* which states that this is a good government Bill. The Bill would raise from 40 to 90% the amount of its levy that the district can put into its working cash fund. This would allow it to minimize borrowing *** and reduce interest costs which *** is bore by the taxpayers." (82d Ill. Gen. Assem., House Proceedings, April 22, 1982, at 132 (comments of Representative Terzich).

On July 14, 1983, the Pollution Control Board, pursuant to a petition filed by the District, granted it a variance allowing it to reduce the level of chlorinating its effluent, which in turn reduced by

---

[1] The legislative history of the bill indicates that it was passed by the General Assembly on May 6, 1982, but returned by the Governor with an amendatory veto affecting other provisions of the bill on November 5, 1982. The legislature accepted the change on December 3, 1982 (six days before the budget was adopted), and the bill was certified by the Governor and simultaneously became law on February 2, 1983.

[2] All statutory references are to Ill. Rev. Stat. 1989, ch. 42, unless otherwise indicated.

$2,500,000 the amount of funds actually expended by the District from the corporate fund for chlorination purposes.

While neither of these events (the passage of Public Act 82—1046 and the granting of the variance by the Pollution Control Board) had formally transpired before the December 9, 1982, adoption of the budget and appropriation ordinance, it is equally clear that both matters transpired more than one year before the 1983 tax levy was extended in June 1984. Thus, for a period of more than one year, the District knew that these items for which expenditures had been appropriated were no longer necessary. The District, however, did not abate the corporate fund levy to take into account that the items were no longer required expenditures, even though they had an exceedingly long period of time to do so, and even though such a procedure was altogether possible. Indeed, $2,341,138 was abated by the District from the levy for the bond and interest fund with respect to pre-1979 bonds, which indicates quite clearly that the abatement process is neither a foreign nor even an esoteric one for the District to employ.

I have not the organs to perceive that the efforts of the General Assembly and the Pollution Control Board were intended by either of them to result in the disadvantage which has befallen the taxpayers of the District. On the contrary, Representative Terzich's remarks and, indeed, the clarity of purpose inherent in Public Act 82—1046 and in the Pollution Board's grant of a variance, leave no doubt that the aim of both agencies was to make it possible for the District to alleviate the tax burden of its constituents, who, not incidentally, are those of the legislature and the Board as well. And this is perhaps the most telling and ironic part of this whole affair: That the District would intensively lobby the legislature for the passage of Public Act 82—1046 as a "good government" measure, gain media support for it, and win an equally tax-saving variance from the Pollution Control Board, only to stand by stoically for months on end, despite the splendid opportunity it had to make a good-faith effort to fulfill the prophesy of the measures that endowed it with the capacity to act in the best interests of its taxpayers.

I disagree with the view the majority takes of the case of *People ex rel. Brenza v. Fleetwood* (1953), 413 Ill. 530, cited by the objector. There, an objection to the library fund was sustained where it was shown that for the preceding five-year period, appropriations for machinery and equipment totalled $23,000, yet no expenditures were made from that account. Accordingly, the current appropriation for the same expenditure was held illegal over the City's contention that

although the expenditure was intended to be made, war conditions prevented it. In the case at bar, however, the situation is far more compelling—the expenditure of $6,300,000 was not prevented by anything that even remotely resembled a *force majeure; it was rendered wholly unnecessary.* As the objector here notes, the District's actions clearly fall within the rule that "[i]t is against the policy of the law to raise taxes faster than they are likely to be needed." *Matthews v. City of Chicago* (1930), 342 Ill. 120, 139.

The District and the majority rely on *People ex rel. Brenza v. Gebbie* (1955), 5 Ill. 2d 565; yet *Gebbie*, as the majority acknowledge, dealt with estimates made by the District and the taxpayer was essentially questioning the accuracy of the estimate. The majority also acknowledge that in *Fleetwood* "the supreme court stated that an objection is not established merely by a showing of a difference between the estimation and the result." (241 Ill. App. 3d at 756.) Yet, it is clear that the objector here challenges the $6,300,000 item relating to tax anticipation bonds and chlorination on the ground that they *were not necessary*—he raises no issue as to excessive estimates. *Indeed, it is the stipulation of the parties in the instant case that the $6,300,000 appropriation was wholly unnecessary.*

Moreover, section 5.3 provides, in pertinent part:

"Such appropriations shall specify the objects and functions (activities) for which they are made and the amount appropriated for each object or function (activity) and shall include appropriations for (a) *all current expenditures* or charges *to be made or incurred during such budget year \*\*\*."* (Emphasis added.) Ill. Rev. Stat. 1989, ch. 42, par. 324(m).

Thus, the District's argument that the surplus of funds resulting from its admittedly unnecessary appropriations was carried over and was taken into account with the 1984 tax levies so that 1984 taxpayers would have been given credit for these amounts which were levied for 1983 but not spent ignores the fact that the budget process is an *annual* one so that *only* expenses for the current year are to be included in the levy. (Ill. Rev. Stat. 1987, ch. 42, par. 324(m).) Significantly, the District cites no authority for the proposition that levies can be either made or held for contingent purposes. In addition to violating section 5.3, the District's conduct falls within the well-defined and well-settled principle of law which prohibits the unnecessary accumulation of moneys by taxing bodies. *People ex rel. Clark v. Baltimore & Ohio Southwestern Ry. Co.* (1933), 353 Ill. 492.

The objector argues that the District overestimated the amount of 1983 expenditures made from the corporate fund by some $18 million

or 14% of the amount actually expended. As indicated above, $6,300,000 of this overestimate of expenditures was the result of the failure of the purpose for which those moneys were to be spent. The balance is simply the result of a significant overestimate of anticipated expenses. The principal difference between the parties as to this issue is that the District claims the right to estimate expenditures for services to be paid for in a later year, *e.g.*, 1984. Yet, as indicated above, the budgeting process is annual in nature and section 5.3 plainly provides that estimates for expenses must be relative to expenses being incurred in the budget year.

The circuit court found the levy for expenses beyond the budget year to be justified by the provisions of section 5.8, which requires the District to create and maintain an appropriation record when it enters into a long-term contract calling for expenditures over a period of years. A plain reading of the statute, however, demonstrates that it does not give the District authority to levy for future expenses beyond the budget year.

The parties have stipulated that the District estimated the amount of corporate fund surplus available for appropriation for 1983 to be $16,082,360. The actual amount of surplus available for appropriation on a budgetary basis of accounting was $21,063,000. Under generally accepted accounting principles, the amount of surplus available was reported at $27,467,000. Accordingly, the corporate fund surplus was underestimated by approximately $11.4 million under generally accepted accounting principles, while the underestimate would have been almost $5 million on a budgetary basis of accounting. Even if we assume that the budgetary basis of accounting is the one to be used, the understatement of approximately $5 million constitutes a 30% disparity between the estimate and that which was actually on hand. Here the underestimate is significant enough to be violative of the rule in *Gebbie*. Moreover, the 1983 incident is not an isolated one; the objector shows that the District made a similar underestimate of approximately $12 million with respect to the corporate fund for the 1984 tax year. It goes without saying that the accumulation of unnecessary funds in the public treasury unnecessarily increases real estate taxes. If these are difficult times for taxing bodies, they are even more trying for the taxpayers of this country who are already required to devote, individually, several months of each work year to the payment of the myriad of taxes levied on them. We need not add to those rigors by looking the other way when taxing bodies take unwarranted liberties with their money. Surely, the legislature has manifested no such intent—anywhere.

I concur, however, in the majority's rejection of the objector's challenge to the District's appropriation of $8,711,350 for various items in the 1983 budget referred to in paragraph 12 of the stipulation entered into by the parties herein which relates to the District's allegedly stating only vaguely the purposes for which the amounts were appropriated. In the case of *In re Application of Novak* (1986), 142 Ill. App. 3d 1004, on which the objector relies, the alleged vagueness as to purpose went to such labels as "for the purposes set forth in the 'Illinois Highway Code,' as amended," and "for the purposes set forth in 'an Act to Revise the Law in Relation to Counties,' as amended" (142 Ill. App. 3d at 1006), etc., which, although held invalid by the court, resulted only in a remand in order to give the taxing body an opportunity to amend the designations. I agree with the majority that the purposes here were validly stated.

I concur also in the majority's holding that the trial court improperly dismissed the taxpayer's objection relating to the bond and interest fund and the annuity and benefit fund levies; I would not agree, though, if a proper calculation of the bond and interest fund levy should result in an excess of $424,917, the figure the trial court had before it, that it should be held to be *de minimis*, as the trial court did, since the error would have affected the tax rate and the discrepancy is actionable.

To the extent that the levies were improperly made, I would hold that the *pro rata* proportion of the 4% levy for loss and costs in collection should be held to be equally invalid.

I would, therefore, hold that the trial court erred in overruling the taxpayer's objections to the 1983 corporate fund levies, except the levy objected to as vague and those relating to the bond and interest and the annuity and benefit funds. Accordingly, I would reverse and remand this cause to the circuit court with instructions to sustain the taxpayer's objections to the improper levies and order the treasurer, accordingly, to make a proper refund to the taxpayer of the taxes he paid under protest.