(No. 28264.—

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellee, *vs.* JOURDAN PACKING COMPANY, Appellant.

*Opinion filed January 17, 1945.*

ADELBERT BROWN, of Chicago, for appellant.

THOMAS J. COURTNEY, State's Attorney, and BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, OTHO S. FASIG, EMMETT HARRINGTON, and J. HERZL SEGAL, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county, overruling appellant's objection to taxes extended for the year 1941. The taxes objected to are those produced by an appropriation, in the appropriation ordinance of the city of Chicago, of 11.1 per cent of each fund appropriated for "loss and cost." The contention is that the amount appropriated and levied for that purpose is excessive.

No hard and fast rule for determining the percentage to be allowed for loss and cost can be laid down. The amount allowable usually rests in the sound discretion of the taxing authorities. The courts will not interfere with the exercise of sound business judgment on the part of the officer extending the tax, unless it clearly appears that such discretionary powers have been abused. *People ex rel. Gill* v. *110 South Dearborn Street Corp.* 363 Ill. 286; *People ex rel. Nash* v. *Westminister Bldg. Corp.* 361 Ill. 153; *People ex rel. Schaefer* v. *New York, Chicago and St. Louis Railroad Co.* 353 Ill. 518; *People ex rel. Clark* v. *Baltimore and Ohio Southwestern Railway Co.* 353 Ill. 492..

The novel argument is made here that since, in *People ex rel. Gill* v. *Schweitzer,* 366 Ill. 568, this court approved a levy of 11 per cent for loss and cost, based upon the showing in that case that the average tax delinquency for the preceding seven years, ending with the year 1934, was 24.64 per cent, this fixed a standard for the ratio between the percentage of tax delinquencies and the percentage levied for loss and cost. It is then argued that in the

case at bar, the delinquencies for the preceding seven years, ending with the year 1940, only averaged 13.69 per cent and that the amount extended for loss and cost should, therefore, be correspondingly reduced from the rate approved in that case. It is contended that there having been a decline in tax delinquencies of 44 per cent for the seven-year period ending with the year 1940, as compared with the seven-year period ending with the year 1934, there should likewise be a reduction of 44 per cent from the 11 per cent appropriated for loss and cost, and approved in the *Schweitzer case*. It is also argued that there has been a decided improvement in the methods of assessing and collecting taxes, and that the general improvement in economic conditions warrants such reduction.

In this connection, it may be stated that the figures contained in the record do not justify appellant's conclusions. There was admitted in evidence certain analyses of tax collections, prepared by the county collector. The figures on which appellant bases its computations and arguments do not include taxes for which judgment was refused, taxes for the nonpayment of which real estate was forfeited to the State, or taxes abated. The statute expressly provides that the appropriation and levy for loss and cost in cities of more than 500,000, shall include: (1) uncollectible taxes, (2) the cost of collecting taxes, (3) the amount of taxes levied for the nonpayment of which real estate will be forfeited to the State and, (4) the amount of taxes extended upon the collector's books which will be abated. (Ill. Rev. Stat. 1939, chap. 24, par. 102.) Notwithstanding the inaccuracy of appellant's figures, as above indicated, they may be used for the purpose of demonstrating the futility of its position.

While the record supports the contention that, up to and including the year 1940, there had been an improvement in the collection of taxes, and a reduction in tax delinquencies, it further shows that the delinquencies still ex-

ceed the amount appropriated and extended for loss and cost. For the six years ending with the year 1940, the record shows that there was, with one single exception, a progressive increase in the percentage of delinquencies. The analysis of the county collector as of December 31, 1941, shows that the percentage of delinquencies in 1935 was 10.52 per cent; 1936, 10.61 per cent; 1937, 12.64 per cent; 1938, 12.48 percent; 1939, 15.58 per cent; and in 1940, 18.72 per cent. If we add to these delinquencies, forfeitures and taxes abated, we find that the delinquencies in every year exceeded the amount appropriated and levied for loss and cost for the year 1941. While it is true that there was a substantial decline in the percentage of delinquencies in the seven-year period ending with the year 1940, compared with the seven-year period ending with the year 1934, yet such decline in delinquencies was not sufficient to bring down the percentage of loss and cost to within the percentage appropriated and levied for loss and cost for the year 1941.

We do not think the question of the amount which might be lawfully appropriated and levied for loss and cost for the year 1941 can be determined from the ratio of loss and cost to the percentage of delinquencies shown in the *Schweitzer case*. In that case the court was not concerned with fixing a maximum rate which could be appropriated and extended for loss and cost, or with any arbitrary ratio between such appropriations and tax delinquencies. The sole question was whether the amount appropriated for loss and cost was unreasonable, under the facts and circumstances shown in that case. The question of reasonableness of the appropriation here involved is not to be determined upon the ratio of the levy to the percentage of the delinquencies shown in any prior case.

The appropriation and levy of taxes for loss and cost in a city of 500,000 or more inhabitants is vastly different from the addition by the county clerk of an amount esti-

mated to cover loss and cost under section 162 of the Revenue Act of 1939. (Ill. Rev. Stat. 1943, chap. 120, par. 643.) Under that section, the county clerk is simply authorized to add to the amount of the levies certified to him, an amount which, in his judgment, will be sufficient to make the amounts extended produce the net amounts of the several sums certified, after deducting therefrom the loss and cost of collection. In cities of 500,000 or more population, the process is entirely different. Section 2a of article 7 of the Cities and Villages Act, concerning appropriations, (Ill. Rev. Stat. 1939, chap. 24, par. 102,) provided that the appropriation ordinance shall include appropriations for an amount estimated to be sufficient to cover the loss and cost of collecting taxes, to be levied for that fiscal year, including the items enumerated in said section of the statute. This statute imposed upon the municipality the duty to include in the appropriation ordinance, an amount estimated to be necessary to cover the loss and cost of collecting taxes, including forfeitures and abatements.

In estimating the amount necessary to cover loss and cost, the city council should properly take into consideration the previous experience with reference to collections, (*People ex rel. Luers* v. *Chicago and Alton Railroad Co.* 324 Ill. 179,) existing economic conditions, (*People ex rel. Gill* v. *Schweitzer,* 366 Ill. 568,) and all other factors affecting the estimated loss and cost of collecting taxes for the fiscal year. We said, in the *Schweitzer case,* that in making this estimate each case must be determined upon its own particular facts.

Here, when the city council undertook to estimate the amount to include in the appropriation ordinance, as sufficient to cover the loss and cost of collecting taxes to be levied for the year 1941, it was required to take into consideration the facts available at that time. From an examination of those facts, it appeared from the records that the average percentage of delinquencies for the seven years ending

with the year 1940, not including forfeitures and abatements, was 13.69 per cent. It further appeared that during the preceding six years there had been a progressive increase in the percentage of delinquent taxes; that, in 1935, the percentage of delinquencies was 10.52 per cent, while, in the year 1940, it was 18.72 per cent. Upon these actual figures and this experience shown by the record, it cannot be said that the appropriation of 11.1 per cent of the items appropriated, to cover the loss and cost of collecting the taxes, constituted an abuse of discretion or that the amount was unreasonable or excessive.

Counsel also argues that a substantial percentage of the appropriations lapses each year, and that this is a factor to be considered in determining the reasonable amount to be levied for loss and cost. It is asserted that when an appropriation lapses, the taxes collected applicable to such appropriation increase the general funds of the city to that extent. The lapsing of appropriations has nothing to do with the question here involved. Lapsed appropriations wash out at the end of each year. The unexpended appropriations are regarded as assets and must be so treated in the budget for the next succeeding year. Consequently, the taxpayer is given full credit for all unexpended appropriations. *People ex rel. Toman* v. *Ames,* 380 Ill. 268.

While the record shows some improvement in the collection of taxes subsequent to the year 1940, the city council was required to make its estimate here involved for the year 1941, upon the information and experience available at that time.

Under the showing in this case, the county court did not err in overruling appellant's objection. The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*