(No. 33322.—

THE PEOPLE *ex rel.* John B. Brenza, County Collector, Appellant and Cross Appellee, *vs.* MORRISON HOTEL CORPORATION *et al.,* Appellees and Cross Appellants.

*Opinion filed November 18, 1954—Rehearing denied Jan. 18, 1955.*

John Gutknecht, State's Attorney, John J. Mortimer, Corporation Counsel, Frank R. Schneberger, and Kirkland, Fleming, Green, Martin & Ellis, all of Chicago, (Edward R. Plusdrak, Robert J. Nolan, Joseph B. Fleming, Thomas M. Thomas, and Thomas F. Scully, of counsel,) for appellant and cross appellee.

Adelbert Brown, of Chicago, for appellees and cross appellants.

Mr. Justice Klingbiel delivered the opinion of the court:

In proceedings brought in the county court of Cook County by the county collector for judgment and order of sale of real estate for delinquent taxes for 1949, the Morrison Hotel Corporation filed objections to taxes levied for the city of Chicago and to taxes levied for the Board of Education of the city of Chicago. Two of the objections

concerning the city of Chicago levy were sustained, and relator appeals to this court. Certain other objections to such levy and the levy of the Board of Education were overruled, and the objector has filed a cross appeal as to such rulings.

The 1949 appropriation ordinance of the city of Chicago, in estimating assets of the corporate fund available for appropriations in that year, included an estimate of taxes to be received from the levies of prior years. This estimate took into account only the levies of 1946, 1947 and 1948. By its objection No. 4, the objector complains that nothing was included for net taxes receivable from the levies for the years 1935 to 1945. The objections recited that $937,201 of taxes for the year 1945 and prior years were collected annually, and that the omission of this asset from the 1949 ordinance caused the levy to be excessive to that extent. The trial court sustained the objection to the extent of $791,613, the net sum actually collected in 1949 from delinquent taxes for the years in question. We think the court erred in sustaining the objection. As to matters which cannot be fixed with certainty the corporate authorities must of necessity make estimates, and in the performance of this duty they are entitled to a wide area of discretion. Section 22-1 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, chap. 24, par. 22-1,) directs that the ordinance "shall set forth estimates, by classes, of all current assets and liabilities of each fund of the municipality, as of the beginning of the fiscal year, for which the appropriations are made, and the amount of these assets which will be available for appropriation in that year, either for expenditures or charges to be made or incurred during that year or for liabilities unpaid at the beginning thereof. Estimates of taxes to be received from the levies of prior years shall be net, after deducting the amounts estimated to be sufficient to cover the loss and cost of collecting these taxes." The statute leaves it to the cor-

porate authorities to estimate what, if anything, will be collected from delinquent taxes for prior years, and except for an arbitrary abuse of discretion the amount so determined will not be reviewed by the courts. The fact that subsequent events showed these uncollected taxes had some value as assets which could be realized upon, and that some money was actually received therefrom since the adoption of the budget, does not show such an abuse of discretion. The budget law is designed to furnish the taxpayer with information as to the amount which is available and for which no current levy will be needed, as well as the amounts to be levied and expended. If an estimate were subject to fluctuation by the happening of subsequent events there would be little stability in a budget and the purpose of the act would be defeated. *People ex rel. Schlaeger* v. *Siebel,* 388 Ill. 98.

In *People ex rel. Nash* v. *Maxwell & Co.* 359 Ill. 570, a similar question was presented with respect to the 1931 appropriation ordinance of the city of Chicago. Estimates of the assets available for appropriation included a sum for net taxes receivable from the 1928, 1929 and 1930 levies. An objection was made that the city council had failed to include an item of more than $28,000,000, representing uncollected taxes levied for the years 1901-1927, inclusive, after allowing 10 per cent for loss and cost of collection. The statutory requirements for appropriation ordinances applicable in that case were substantially the same as those involved in the case at bar. It was held that the city council was not required to include an estimate for such item; that the statute does not give value to uncollected taxes levied for previous years and make them available as if they were surplus cash assets merely by reason of their existence on the books of the taxing body; and that in the absence of a contrary showing it must be presumed that the city council did not consider such uncollected taxes as assets which could be realized upon in 1931.

Objector contends, however, that in the case at bar there is sufficient proof of the amount which the city could reasonably expect to receive from this source during 1949, that such proof shows the uncollected credits to be solvent. The evidence referred to concerns the percentages received in other years from delinquent taxes for corresponding eleven-year periods. Thus in 1945 $1.44 out of each $100 of delinquent taxes for the years 1931-1941 was collected, in 1946 81 cents out of each $100 of delinquent taxes for the years 1932-1942 was collected, in 1947, $1.12 out of each $100 of delinquent taxes for the years 1933-1943 was collected, and in 1948 $1.01 out of each $100 of delinquent taxes for the years 1934-1944 was collected. The alleged understatement of assets for 1949 is based upon the assumption that similar proportions of the uncollected taxes for the years 1935 to 1945 would probably be collected in 1949. We cannot agree that the failure to make such assumption was an arbitrary abuse of discretion. In any event the failure to attribute any value to an asset upon which collections of only 1½ per cent could be expected at best does not establish a lack of good faith. Taxation is a practical business, in which the corporate authorities should carefully avoid any overestimate of the value of assets and their availability for expenditure. As we recently observed in *People ex rel. Brenza v. Chromium Corp.* 3 Ill. 2d. 271, "The accuracy of a municipality's estimates of available revenue may determine whether or not its policemen, firemen and school teachers can be paid." The objector failed to prove that in omitting any value for levies of years prior to 1946, the estimate of receipts from delinquent taxes was unreasonable. Objection No. 4 should have been overruled.

Objection No. 9 concerns the appropriation for the library building fund, which objector contends was unitemized and excessive. The ordinance showed appropriations for the purchase of sites and buildings in the

amount of $100,000, for the construction and equipment of buildings in the amount of $335,000, and for the repairs and alterations of buildings equipment in the amount of $110,000. The trial court sustained the objection and held illegal the 1949 levy of $250,000 for the library building fund. The evidence discloses that for each of the years 1946, 1947 and 1948 an approriation for purchase of sites was made in the amount of $100,000, and that no expenditures were ·made during those years for such purpose. It was further shown that an average appropriation of $213,750 was made for construction during that period, of which approximately 12 per cent was expended. The comptroller's report for the year 1949 shows that of the $100,000 appropriated for "purchase of sites and buildings," nothing was expended, and that of the $335,000 appropriated for construction and equipment of buildings only $61,892.29 was expended. The comptroller's report for 1948 failed to include any reserve for a building program; and the 1949 report disclosed that only $100,000 of the past appropriations, including that for 1949, was allocated to a reserve for building and sites. Objector contends such facts demonstrate that the appropriations in question grossly exceeded the requirements based upon past experience, and were made with the intention of draining off taxes levied for the construction of buildings and using them for other purposes.

It is a well-settled rule that levies which result in an unnecessary accumulation of funds are invalid. The authority to levy a tax for building purposes is intended to provide for the needs of the ensuing year and not to provide a fund for possible future needs; (*People ex rel. Reeves* v. *Bell,* 309 Ill. 387;) and a tax levy in an amount largely in excess of the requirements for the particular purpose during the ensuing year is illegal and void. (*People ex rel. Brenza* v. *Fleetwood,* 413 Ill. 530, 551; *People ex rel. Toman* v. *Signode Steel Strapping Co.* 380 Ill. 633.)

As to the case at bar, however, these general rules have been rendered inapplicable by section 1a of the Libraries Act (Ill. Rev. Stat. 1947, chap. 81, par. 1a,) which expressly authorized the accumulation of funds for the purposes in question. That section, which became law on June 29, 1945, provides as follows: "The library board in cities of over one hundred and fifty thousand inhabitants may accumulate and set apart as post-war reserve funds the unexpended balances of the proceeds annually received from the said additional tax for the purchase of sites and buildings, for the construction and equipment of buildings, for the rental and repair of buildings required for library purposes, and for repairs and alterations of library buildings and equipment, said reserve funds to become available for expenditure immediately after the repeal of Order Number 831, as amended, of the United States War Production Board or of any other Order of said Board imposing restrictions on wartime construction to conserve critical materials, said funds to continue to be available for such purposes for a period of two years after the termination of the present wars between the United States and Germany and Japan by the signing of definite treaties of peace or by proclamation of the President of the United States or the Governor of this State that the emergency justifying extraordinary war-time powers no longer exists." Objector argues that construction restrictions were terminated on October 15, 1945; that the reason for the impoundment of construction funds ceased at that time; and that the right to create the fund therefore expired. The position is without merit. The statute does not so limit the time within which the accumulations may be made, but provides merely that the funds shall remain available for expenditure for two years after termination of the war. We have taken judicial notice of the fact that the President had not, prior to the proclamation signed October 24, 1951, pronounced "the end of the war." (*Orme* v. *Northern Trust*

*Co.* 410 Ill. 354, 360.) The authority granted by the statute warranted the library board in accumulating funds during the years in question.

The record also fails to support objector's position that funds appropriated for construction and equipment of buildings and the purchase of sites were used for other purposes. While it does not appear that appropriations for building purposes in the years 1946, 1947 and 1948 had been placed in a reserve for such purpose, the combined library funds surplus showed substantial increases and there is no evidence of any other purpose for which building fund moneys were used. Objector's claims that the appropriations were not sufficiently itemized must likewise be rejected. The right of a taxpayer to have stated separately the purposes for which public money is appropriated does not mean that the city must itemize its appropriations to a point burdensome upon it. It is unnecessary to specify each particular item of expense for which the levy is made. (*People ex rel. Nelson* v. *Swanson,* 409 Ill. 334.) The appropriations specified with sufficient certainty the purposes for which the money was to be expended. The county court erred in sustaining objection No. 9.

By its cross appeal the objector maintains the county court erred in overruling objections to levies for (1) a part of the city of Chicago relief fund, (2) the Chicago Board of Education liabilities designated "deferred credits" and "provisions for cost of sick leaves," and (3) a part of the teachers' pension fund. As to the levy for the relief fund it is argued that the appropriation ordinance grossly underestimated the available cash and overstated the current liability; that the actual amount of cash available for 1949 appropriations, and the actual current liability at the close of the prior fiscal year, were known when the 1949 appropriation ordinance was adopted; and that the corporate authorities should have used the exact amounts instead of estimates.

The 1949 appropriation ordinance was originally adopted on December 13, 1948. It was amended on December 22, 1948, by reducing the estimated liability for accounts payable from $350,000 to $150,000, but the appropriation for such purpose, in the amount of $350,000, was not reduced. On January 14, 1949, the corporate authorities reconsidered the appropriation ordinance, and reduced the 1949 appropriation for the relief fund's current liabilities by $200,000. The annual report of the comptroller for the year 1948 subsequently disclosed actual current liabilities on December 31, 1948, in the amount of only $51,740.13. It also showed cash available on that date in the amount of $608,905.70, whereas in the appropriation ordinance this item was estimated as only $267,114.82. It is insisted that when the relief fund appropriations were reduced on January 14, 1949, the budget should also have been corrected to conform with the fiscal situation known or ascertainable on that date.

The statute requires that the annual appropriation ordinance be passed within the last sixty days of the preceding fiscal year. (Ill. Rev. Stat. 1947, chap. 24, par. 22-1.) Such ordinance must contain estimates of all current assets and liabilities of each fund as of the beginning of the fiscal year for which the appropriations are made. Thus the procedure contemplated by such requirements precludes the use of exact figures in drawing up the ordinance. The mere facts that the comptroller's report discloses differences between the actual financial condition at the close of the preceding year and the city's estimated financial condition as shown in the appropriation ordinance, and that items of appropriation were reduced at a time when the exact fiscal status could have been ascertained, do not require that objections to the taxes must be sustained. The appropriation ordinance must be passed before the end of the year, and, except for changes made at the next regular meeting of the city council occurring not less than five days there-

after, may be amended only by repealing or reducing the amount of an item of appropriation. (Ill. Rev. Stat. 1947, chap. 24, par. 22-1.) To argue that because the appropriation was reduced on January 14, 1949, the estimates of assets and liabilities must be replaced with the exact amounts known at that time, is to ignore the statutory provisions governing annual appropriation ordinances.

In *People ex rel. Brenza v. Fleetwood,* 413 Ill. 530, the 1948 tax levy ordinance was adopted on January 23, 1948, at which time the actual fiscal status at the close of 1947 was known or ascertainable. It was argued that since the tax levy ordinance was passed after the beginning of the new fiscal year, the estimates appearing in the appropriation ordinance should have then been replaced with the exact figures made available by an audit of the funds. In rejecting the contention this court said: "This argument, however, completely disregards the statutory requirement that the tax levy ordinance must be based upon the specific appropriations set forth in the appropriation ordinance. (Ill. Rev. Stat. 1947, chap. 24, par. 16-1.) It disregards also the fact that the conditions under which an appropriation ordinance may be amended are severely restricted. Amendment is permitted only at the next regular council meeting occurring not less than five days after final passage of the appropriation ordinance, except that during an additional fifteen-day period an item of appropriation may be repealed or reduced in amount." Our holding in the *Fleetwood case* is controlling here, and the county court was correct in overruling the objection.

The next objections relate to the 1949 tax levies for the Board of Education. It is charged that the educational fund appropriation for "accounts payable" of $4,168,087.89 is in excess of the actual liability by $1,211,414 because it included items of $86,414 for "deferred credits" and of $1,125,000 for "cost of sick leaves." The latter two items are challenged as being unauthorized, vague and indefinite,

and as not constituting proper liabilities because no appropriations had been made for such purposes for the preceding fiscal year.

The 1949 budget was adopted on January 12, 1949. Under the heading of "Appropriations by Funds for Unpaid Liabilities Incurred During Prior Years," it included an educational fund appropriation for "Accounts payable, as shown by balance sheet * * * $4,168,087.89." The balance sheet for the educational fund showed, as one of the two items totalling that amount, "Estimates of Accounts Payable, including estimates of audited vouchers, participation certificates, inter-fund loans and purchase orders payable * * * $4,119,517.08." On May 5, 1949, Arthur Young & Company, an independent firm of certified public accountants, submitted the annual audit and financial report of the board for the year 1948, which showed that among the unpaid liabilities of the educational fund on December 31, 1948, were "deferred credits * * * $86,414.38" and "provision for cost of sick leaves * * * $1,125,000." Thus the two amounts challenged by objector were not specifically appropriated for but were included in the budget under the general designation "accounts payable." It is not contended that the appropriation was not sufficiently itemized, or that the language used in the budget is vague and indefinite. Objector's criticisms are directed only to the terms used in the subsequent audit and financial report. It is asserted that the term "deferred credits" creates the impression that it is an asset rather than a liability, and that the term "provision for cost of sick leaves" likewise does not connote an existing liability. It is unnecessary to determine what the accountants meant by the use of this phraseology. The budget appropriated the amounts in question for "accounts payable," and such designation cannot be questioned on the ground that accounting phraseology used in the breakdown of liabilities shown in the audit

fails to clearly establish its accuracy. The county court properly overruled the objections.

Objector contends the levy for the teachers' pension fund is excessive because a 1949 educational fund levy to pay the pension fund was not considered as an available asset in diminution of the requisite 1949 pension fund levy. An item of $1,784,668.48 was appropriated and levied by the board as an account payable to the teachers' pension fund, and it is insisted this amount should have been deducted in determining the 1949 levy for the pension fund. It appears that the stated sum represents a deficiency as of December 31, 1948, for the payment of which express statutory provision is made. The applicable statute (Ill. Rev. Stat. 1947, chap. 122, par. 34-113,) declares that "If the moneys collected and paid into the public school teachers' pension and retirement fund from taxes levied for the purpose of providing revenue for the fund in any current fiscal year do not equal the amount of the moneys deducted or contributed from teachers' salaries for the fund for such year, or if the current income of the fund in any fiscal year ever is less than the current disbursements of the fund for such year, the board of education shall the next year, *in addition to demanding and directing the annual tax levy hereinbefore provided for* set apart and appropriate from moneys derived or to be derived from the general tax levy for educational purposes an amount of money sufficient to supply such deficiency or deficiencies and promptly pay such sum of money into the fund for such purpose and restore any of the reserve of the fund that may have been so temporarily used." (Emphasis supplied.) The statutory provision governing the annual taxes to be levied for the pension fund fails to limit them to the requirements of the fund as determined by the budget of the Board of Education. It prescribes as follows: "To provide revenue for the fund the board of

education shall annually demand and direct, and the city council shall upon such demand and under such direction annually levy, a tax of .06 per cent of the full, fair cash value, as equalized or assessed by the Department of Revenue, of all taxable property on all taxable property in the city, provided, however, that such tax shall be at a rate on a dollar of the assessed valuation of all taxable property in such city, which when extended, will produce a sum not to exceed * * * four million dollars ($4,000,000.00), for the year 1949, * * * The tax, when collected, shall be paid into the public school teachers' pension and retirement fund." (Ill. Rev. Stat. 1947, chap. 122, par. 34-95.) In view of the mandatory requirements of these statutes the amount to be levied for the teachers' pension fund could not be reduced because of other sums owed by the board to that fund. The county court was correct in overruling the objection.

The judgment of the county court of Cook County is reversed in part and affirmed in part, and the cause is remanded to that court with directions to enter judgment in accordance with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*