639 N.E.2d 559 (1994)
159 Ill.2d 393
203 Ill.Dec. 239
In re APPLICATION OF Edward J. ROSEWELL (Charles Marotta, Appellant, v. Metropolitan Water Reclamation District, Appellee).
No. 74572.
Supreme Court of Illinois.
July 28, 1994.
*560 Thomas J. McNulty and Maria E. Stangel, of Keck, Mahin & Cate, Chicago, for appellant.
James B. Murray, Michael G. Rosenberg and Ronald M. Hill, Chicago, for appellee.
James A. Rooney, Chicago, for amici curiae Allstate Insurance Co. et al.
O'Keefe, Ashenden, Lyons & Ward (John F. Ward, Jr., and Mark R. Davis, of counsel), and Powell & Reilly, P.C. (Charles A. Powell, of counsel), all of Chicago, for amicus curiae The Civic Federation.
Susan S. Sher, Corporation Counsel (Lawrence Rosenthal, Benna Ruth Solomon, Bobbie McGee Gregg and Joan Boman, of counsel), Patricia J. Whitten, of Seyfarth, Shaw, Fairweather & Geraldson, James D. Wascher, of Friedman & Holtz, P.C., Joseph J. Griseta, of Simon & Spitalli, all of Chicago, Peter M. Murphy and Beth Anne Janicki, both of Springfield, for amici curiae City of Chicago et al.
Justice McMORROW delivered the opinion of the court.
Appellant, Charles Marotta, paid his 1983 real estate taxes under protest and filed objections to the levies of several units of local government. This appeal involves certain objections Marotta made to the 1983 levies of the Metropolitan Water Reclamation District of Greater Chicago (District). Following a hearing, on stipulated facts, the circuit court dismissed Marotta's objections. The appellate court affirmed in part and reversed in part, with one justice dissenting. (241 Ill. App.3d 753,182 Ill.Dec. 130, 609 N.E.2d 664.) Marotta filed a petition for leave to appeal to this court, which we granted (134 Ill.2d R. 315).
The tax challenges in this case must be examined in the context of the District's annual budgeting and appropriations procedures, which are set forth in section 5.7 of the Metropolitan Water Reclamation District Act (Ill.Rev.Stat.1991, ch. 42, par. 324q). As a unit of local government, the District is authorized by statute to levy taxes on the real estate located within its boundaries. (See Ill.Rev.Stat.1991, ch. 42, par. 332.) The District's budget consists of several funds, which are treated as distinct financial entities within the budget. (Ill.Rev.Stat.1991, ch. 42, *561 pars. 324l, 324m.) The budget is to present a complete financial plan for the budget year, and for each fund the District is to estimate the total expenditures and the anticipated amount of monies that will be available during that year to meet such expenditures. (Ill.Rev.Stat.1991, ch. 42, par. 324m.) When expenses exceed assets, the difference may be made up in all or part by the property tax.
By law, the District must adopt the appropriation and levy ordinances as part of the budget and at the same time the budget is adopted. (Ill.Rev.Stat.1991, ch. 42, par. 324q.) Before the board of trustees takes final action on the proposed budget, the budget is made available for public inspection and, following published notice, the board must hold at least one public hearing (Ill. Rev.Stat.1991, ch. 42, par. 324p). After the board's adoption of the appropriation ordinance for the budget year, no further or different appropriation may be made by the board, with very limited exceptions. (See Ill.Rev.Stat.1991, ch. 42, par. 324q.) Upon final approval of the budget and ordinances, the District files a certificate of levy with the county clerk, pursuant to the appropriation ordinance. The clerk is then required, by operation of section 162 of the Revenue Act of 1939, to extend the District's levy in accordance with the certificate. The clerk must determine the tax rate that will produce the amounts of taxes certified to the clerk by the various taxing districts. Ill.Rev.Stat.1991, ch. 120, par. 643.
In the case at bar, the District's 1983 budget provided for a combined total in excess of $476 million, for all of the funds that made up the budget. Of that amount, $148.7 million was appropriated for the corporate fund. We address, in order, each of Marotta's four objections to the corporate fund levy.

I. Objection to Levy of $6.3 Million for "Unnecessary Expenses" or "Failed Purposes"
Marotta challenges the validity of two line items in the corporate fund budget for which monies were appropriated but not spent: (1) estimated expenses in the amount of $3.8 million, representing interest payments on tax anticipation notes to be issued by the District in 1983; and (2) estimated expenses for chlorination of effluents in the water. Following the passage of the 1983 budget and the corresponding appropriation and levy ordinances, two events occurred that obviated the District's need for the above two items of appropriation.
First, on February 2, 1983, Public Act 82 1046 took effect. (Ill.Rev.Stat.1991, ch. 42, par. 328(b), as amended by Pub. Act 82 1046.) This law authorized the District to increase its corporate working cash fund through the issuance of long-term bonds. These bonds were issued in March 1983, which eliminated the need for the District to issue tax anticipation notes for the same purpose of increasing the working cash fund. As a result, the $3.8 million interest expense that the District had appropriated in the budget year 1983 was no longer needed.
Second, in July 1983, the Pollution Control Board granted the District a variance that allowed it to reduce the level of chlorination used for the treatment of water. This caused a corresponding reduction in costs of $2.5 million. See People v. Pollution Control Board (1983), 119 Ill.App.3d 561, 75 Ill.Dec. 88, 456 N.E.2d 909.
The above two events resulted in a combined total "savings" of $6.3 million in expenses that had been appropriated and levied by ordinance as part of the 1983 budget. Because the actual extension of the 1983 levies for purposes of collection did not occur until June 1984, Marotta argues that the District should have abated the taxes at that time. According to Marotta, "taxing bodies cannot not legally levy money for purposes which are known * * * to be unneeded prior to the levy. * * * [T]axing bodies may easily avoid unnecessary levies through the abatement process." Marotta urges this court to hold that the corporate fund levy of the "unnecessary" $6.3 million resulted in either an illegal accumulation of taxpayers' money in the District's treasury or an illegal diversion of tax money to another fund or purpose.
The appellate court in the instant case disagreed with Marotta, holding that the District's estimation of expenditures must be left *562 to the sound discretion of the taxing authority and should not be disturbed by a reviewing court unless there is a clear abuse of discretion. (241 Ill.App.3d at 756, 182 Ill. Dec. 130, 609 N.E.2d 664, citing People ex rel. Brenza v. Gebbie (1955), 5 Ill.2d 565, 126 N.E.2d 657.) The court also noted that a taxpayer's objection is not established "merely by a showing of a difference between the estimation and the result." 241 Ill.App.3d at 756, 182 Ill.Dec. 130, 609 N.E.2d 664, citing People ex rel. Brenza v. Fleetwood (1952), 413 Ill. 530, 109 N.E.2d 741.
The dissenting justice stated that the majority misapprehended the issue by focusing on the District's original estimates of costs for the year 1983; Marotta's objection was to the collection of $6.3 million in tax anticipation interest and chlorination expenses that had been rendered "wholly unnecessary" by the events that followed the adoption of the budget. (Emphasis omitted.) 241 Ill.App.3d at 762-63, 182 Ill.Dec. 130, 609 N.E.2d 664 (Scariano, J., dissenting).

A. Standard of Review
Marotta initially raises a challenge to the abuse of discretion standard that the appellate court applied in considering the levy of $6.3 million for expenses based on chlorination costs and the interest on tax anticipation notes. Although acknowledging that the estimates of taxing bodies are subject to a discretionary standard, Marotta argues that where, as here, the levy is for an unnecessary expense, the levy is illegal as a matter of law. That being so, Marotta argues, the appellate court erred in deferring to the District's exercise of discretion.
In our view, Marotta's focus on the standard of review is misplaced. If the challenged levy is void, in the sense that the taxing body exceeded its lawful authority in making the levy, the courts may sustain the taxpayer's objection without resort to the abuse of discretion standard. This is so because the taxing body lacks discretion to impose an unlawful levy. See People ex rel. Reeves v. Bell (1923), 309 Ill. 387, 141 N.E. 187 (where the court held that a school district's levy of a tax for building purposes was illegal because no part of it was needed for that purpose in the ensuing year and no expenditure of the tax for building purposes was contemplated, except for possible future needs; therefore, the school district exceeded its legal authority in levying the particular tax).
We do not regard the District's appropriations and levies in this case as ultra vires. The District does not contend (and the appellate court did not imply) that the District had discretion to include illegal tax levies in the appropriation and levy ordinances for the fiscal year 1983. Instead, the District defends its actions in the case at bar by arguing that its valid appropriations and levies for the 1983 tax year did not become void by the occurrence of events subsequent to the adoption of the budget and accompanying ordinances. Marotta does not argue that the District lacked power to appropriate and levy for its anticipated expenses in 1983, including the chlorination expenses and the interest payments on the tax anticipation notes. Therefore, we begin our analysis of the proper standard by considering the general principles set forth in numerous case decisions.
In reviewing a taxpayer's objections to governmental appropriations and levies, the courts play a limited, although significant, role. The law is settled that the taxing body retains broad discretion in estimating the amounts necessary to carry out its lawful objectives:
"[E]xcept for an arbitrary abuse of discretion the amount so determined will not be reviewed by the courts. * * * The budget law is designed to furnish the taxpayer with information as to the amount which is available and for which no current levy will be needed, as well as the amounts to be levied and expended. If an estimate were subject to fluctuation by the happening of subsequent events there would be little stability in a budget and the purpose of the act would be defeated. [Citation.]" People ex rel. Brenza v. Morrison Hotel Corp. (1954), 4 Ill.2d 542, 545, 123 N.E.2d 488.
See also People v. Atchison, Topeka & Santa Fe Ry. Co. (1913), 261 Ill. 33, 37, 103 N.E. 614 (where the court stated, "It is against the policy of the law to raise taxes faster than they are likely to be needed, but our statutes *563 have committed to the just and reasonable discretion of the county boards the question as to what is the proper amount of taxes to be raised for the current county expenses. The courts will only interfere to prevent a clear abuse of such discretionary powers").
That there is a discrepancy between the amount of money appropriated for tax purposes in a given year and the amount actually needed for that year is of limited significance. "[I]t is not necessary for taxing authorities to wait until the money is actually needed for paying outstanding obligations before taxes may be levied, but they have the right to, and should, anticipate, as nearly as they can, the amount of moneys that should be raised to meet obligations when they become due * * * [citations]." Mathews v. City of Chicago (1930), 342 Ill. 120, 139-40, 174 N.E. 35. See also People ex rel. Schaefer v. New York, Chicago & St. Louis R.R. Co. (1933), 353 Ill. 518, 523-24, 187 N.E. 443 ("Courts will not interfere with the exercise of sound business judgment on the part of taxing authorities except to prevent abuse of discretion").
The above authorities state that abuse of discretion is the proper standard for courts to apply in reviewing the estimates that taxing bodies employ in passing their appropriation and levy ordinances as part of their budgets. We decline to depart from that standard in this case. We therefore reject Marotta's contention that the appellate court erred by reviewing the levies in issue under a standard of abuse of discretion.

B. Unnecessary Accumulation or Diversion of Funds
Having reaffirmed the proper standard of review, we next address the merits of Marotta's primary argument. He claims that case law supports his contention that the challenged $6.3 million in corporate fund levies are void per se. Marotta's contention is premised on case law which holds that taxing authorities may not levy taxes that result in either an unnecessary accumulation of taxes or an illegal diversion of taxes levied for one purpose to a different purpose or use. (E.g., People ex rel. Brenza v. Morrison Hotel Corp. (1954), 4 Ill.2d 542, 547, 123 N.E.2d 488 (tax levy largely in excess of the amount needed for a "particular purpose" during the ensuing year is illegal); People ex rel. Brenza v. Fleetwood (1952), 413 Ill. 530, 551, 109 N.E.2d 741.) These cases do not support Marotta's argument.
In Morrison Hotel, this court was asked to review certain taxes levied by the City of Chicago and the board of education for the year 1949. One of the tax objections involved the library building fund, which had been the subject of unexpended appropriations in three years preceding 1949. The objector argued that the 1949 appropriations for the library building fund "grossly exceeded the requirements based upon past experience, and were made with the intention of draining off taxes levied for the construction of buildings and using them for other purposes." Morrison Hotel, 4 Ill.2d at 547, 123 N.E.2d 488.
Marotta's argument in the case at bar is similar to the argument made by the tax objector in Morrison Hotel, although Marotta does not establish that the District's 1983 appropriations grossly exceeded requirements based on past experiences. Morrison Hotel is of limited assistance to Marotta because that court did not decide whether, under case law, the library building fund appropriation could be deemed illegal as an unnecessary accumulation or diversion of funds. As the court noted, in that case there was a specific statute that authorized an accumulation of funds for the purpose in question. Therefore, Morrison Hotel is inapplicable to the instant case.
In Fleetwood, the tax objector successfully challenged Chicago's 1948 budget appropriation of an amount to be used for the city's library maintenance fund. The objector presented evidence of the city's pattern of making appropriations for the library maintenance fund but not using the appropriated money for maintenance purposes. Only a tiny fraction of the library maintenance monies appropriated during a four-year period for furniture and fixtures were used for that purpose. None of the library maintenance monies that were appropriated for machinery, equipment, or motor vehicles were used for those purposes. Accordingly, the court *564 sustained the taxpayer's objection to the city's 1948 library maintenance appropriation and corresponding levy. The court held that a levy greatly in excess of the amount required for a particular purpose, made with the intention of creating a surplus to be used for another purpose, is illegal. Fleetwood, 413 Ill. at 551, 109 N.E.2d 741.
In the instant case, Marotta presented no evidence that the District has a history of making appropriations and levies greatly in excess of the amounts needed for a particular purpose. Nothing in the record indicates an intention, on the part of the District, to create a surplus in certain funds to be used for other purposes. Therefore, Fleetwood provides little support for Marotta's argument.
Our research reveals that tax objectors bear a substantial burden of proof in establishing that a taxing body has illegally accumulated or diverted taxes in a given year. This burden is illustrated in People ex rel. Toman v. Signode Steel Strapping Co. (1942), 380 Ill. 633, 44 N.E.2d 555. In Signode Steel, the taxpayer filed an objection to the City of Chicago's 1939 levy for the library maintenance fund, asserting that for a period of years preceding the 1939 levy, the expenditures from the fund averaged only 33% of the appropriations. The library maintenance fund expenditures for the years 1938 and 1939 amounted to approximately 50% of appropriations. The court recited the general principle that a tax largely in excess of the amount required for the purpose for which it was made, with the intention of creating moneys to be used for other purposes, is illegal. (Signode Steel, 380 Ill. at 635, 44 N.E.2d 555.) The court also cited the equally established principle that the burden rests on the taxpayer to establish the illegality of the tax and that the court will not interfere with the decision of the taxing authorities as to the amount of taxes where it does not "`clearly appear that they have abused the discretion vested in them.'" Signode Steel, 380 Ill. at 636, 44 N.E.2d 555, quoting People ex rel. Clark v. Baltimore & Ohio Southwestern Ry. Co. (1933), 353 Ill. 492, 496, 187 N.E. 463.
The taxpayer in Signode Steel conceded that he would fail to sustain his burden of proof if the court relied on the figures for the 1939 levy alone. However, the taxpayer claimed that his objection was established by the history or pattern of excessive appropriations and levies. The court held that although it was apparent that the appropriations had been largely in excess of the average annual expenditures, there was no proof in the record as to the purpose for which the funds were expended. Therefore, the tax objector failed to meet his burden of proving that the city intended to accumulate and divert funds from one use to another. Signode Steel, 380 Ill. at 636, 44 N.E.2d 555. Cf. People ex rel. Schaefer v. New York, Chicago & St. Louis R.R. Co. (1933), 353 Ill. 518, 524, 187 N.E. 443 (court sustained taxpayer's objection to a levy that was found to be "palpably unnecessary" under the evidence offered at a hearing).
In the instant case, Marotta failed in his attempt to prove an illegal accumulation or diversion of the $6.3 million in issue. There is nothing in the record to indicate that the District had a history of over-appropriating monies for the corporate fund with the intention of using the surplus for a hidden purpose. Marotta does not establish that the District misapplied the excess funds or used them in a manner unauthorized by statute. Nevertheless, Marotta insists that the appellate court opinion "opens the door to the creation of a dangerous rule which would encourage taxing bodies to appropriate for expenses never to be incurred and then, after the levy is a fait accompli, divert with impunity the excess levies of an unnecessary fund." This statement contains the unwarranted assumption that taxing bodies will begin to include, in their annual budget appropriations and levies, amounts for expenses that taxing body knows, in advance, will never be incurred during the budget year. Such an assumption may be valid if the taxing body possesses a crystal ball. In the instant case, however, the $6.3 million in appropriations were not rendered "wholly unnecessary" until after the completion of actions by third parties who were not under the District's control. These parties included the Pollution Control Board, which granted the reduction in the water chlorination requirements; *565 the circuit and appellate courts, which approved the Board's decision; and the legislature and Governor, who approved legislation authorizing the District's issuance of long term bonds for the working cash fund. At the time the District passed its budget and ordinances for the 1983 tax year, the outcome of these events was not assured. Accordingly, we are not persuaded by Marotta's suggestion that taxing authorities such as the District will deliberately include unnecessary appropriations in their annual budgets with the hope of gaining a "windfall" of moneys to use for unauthorized purposes.
Although Marotta implies in this appeal that the $6.3 million was improperly diverted to other uses, there is no showing in the record to support such conclusion. By statute, surplus funds at the end of one year must be carried over into the next budget year and counted as an asset. (Ill.Rev.Stat. 1991, ch. 42, par. 324m.) The inclusion of such an asset in the following year's budget will have the corresponding benefit of reducing the appropriation and levy needed for that year. As this court has held, surpluses are to be expected upon application of conservative budgeting practices and no prejudice to taxpayers results when validly levied taxes are collected and applied to the corporate fund surplus in the following year. (People ex rel. Schlaeger v. Jourdan Packing Co. (1945), 389 Ill. 163, 169, 58 N.E.2d 910; see also People ex rel. Loehr v. Missouri Pacific R.R. Co. (1922), 301 Ill. 541, 547, 134 N.E. 314 (over the years, taxing burden is equalized among persons and property of the taxing authority).) The court in Schlaeger remarked:
"Lapsed appropriations wash out at the end of each year. The unexpended appropriations are regarded as assets and must be so treated in the budget for the next succeeding year. Consequently, the taxpayer is given full credit for all unexpended appropriations. [Citation.]" Schlaeger, 389 Ill. at 168, 58 N.E.2d 910.
We conclude that Marotta's challenge to the District's levy of $6.3 million must fail because it is based on events that occurred after the adoption of the budget and ordinances at the end of 1982. As we noted at the beginning of this opinion, by law, the levy ordinance must be adopted contemporaneously with the budget and appropriation ordinance. Therefore, we hold that the appellate court in this case properly considered the validity of the challenged levies at the time of their adoption as part of the budget. Case law holds that the validity of a levy is to be determined as of the time it is made (e.g., People ex rel. Schlaeger v. Buena Vista Building Corp. (1947), 396 Ill. 164, 174, 71 N.E.2d 10), not extended (In re Application of Du Page County Collector (1983), 118 Ill. App.3d 139, 149, 73 Ill.Dec. 730, 454 N.E.2d 827). The validity of a levy is not defeated by the occurrence of events subsequent to the levy. People ex rel. Schlaeger v. Siebel (1944), 388 Ill. 98, 57 N.E.2d 378.
In the instant case, there is no doubt that the District possessed the basic authority, in 1982, to appropriate for and levy taxes to include the chlorination expenses and the interest expense on the tax anticipation bonds. Therefore, because the District's estimated budget appropriations and levies were legal and proper at the time the budget and ordinances were adopted, we hold that the subsequent occurrence of events in this case did not render the levies invalid. Marotta's argument that the levies were per se illegal must fail.

C. Duty to Abate Levies Before Their Extension, Based on Changed Circumstances
Marotta next contends that, even if the initial budget appropriation and levy ordinances were valid at the time of their passage, the District knew that the $6.3 million in issue was unnecessary by the time the 1983 taxes were extended by the county clerk for collection in 1984. Ergo, per Marotta, the only way to prevent the unnecessary accumulation or diversion of taxes is to require an abatement of the $6.3 million.
The dispositive issue may be stated as follows: Did the District have a legal duty to abate the tax levies for the fiscal year 1983, based on subsequently occurring events that reduced the District's actual fiscal needs for 1983?
*566 To answer this question we have examined the provisions of the Metropolitan Water Reclamation District Act, which governs the District's powers and duties. The legislature has not imposed a duty on the District to make interim budget adjustments based on events occurring after the adoption of the budget and ordinances. As we noted earlier in this opinion, the statutory scheme contemplates an annual formulation of the District's budget, in which the anticipated needs for the ensuing year are met through the adoption of a budget and the requisite appropriation and levy ordinances. Once the budget and associated ordinances are adopted, the District loses the authority to amend the budget, with few statutory exceptions that are not applicable here. (See Morrison Hotel, 4 Ill.2d at 551, 123 N.E.2d 488 (tax levy ordinances must be based upon the specific appropriations set forth in the appropriation ordinances and conditions under which appropriation ordinances may be amended are severely restricted).) After the District adopts the budget and ordinances, the county clerk must calculate the appropriate tax rate. The clerk then extends the levy, which is a ministerial act. See, e.g., City of Rockford v. Gill (1979), 75 Ill.2d 334, 26 Ill.Dec. 669, 388 N.E.2d 384.
Marotta has not drawn our attention to any language in the Act that requires the District to periodically reevaluate and update its annual budget, appropriations, and levies following their initial adoption. Nor does Marotta cite decisional law that imposes on taxing districts a duty, before the clerk extends the levy, to abate an otherwise valid levy solely because of events occurring after the original enactment of the levy ordinance.
For these reasons, we decline to impose on the District a duty to abate the challenged $6.3 million in the instant case. The legislature could have imposed a duty upon the District to abate a levy if, at the time of the extension of the levy, the purpose of particular appropriations had failed. Similarly, the legislature could have required the District to reassess its fiscal needs for the tax year in issue closer in time to the actual extension of the levy by the clerk. This court, however, will not presume to create such a duty in light of the extensive statutory regulation of the District's taxing powers and limitations. Taxing laws are formulated and refined by legislative action, which necessarily takes into account a broad array of facts, policies, and practicalities.
However, it appears that the District has discretionary power to abate tax levies and, indeed, in the instant case it is undisputed that the District abated approximately $2.3 million from the levy for the bond and interest fund with respect to pre-1979 bonds. Therefore, the issue of the District's failure to abate the $6.3 million in chlorination expenses and interest payments again calls into play the applicable standard for this court's review. To the extent the District had discretion to abate the challenged levy, at any time before the levy was extended, we believe our standard of review must be the same as analyzed elsewhere in this opinion, to wit, an abuse of discretion. (See People ex rel. Brenza v. Gebbie (1955), 5 Ill.2d 565, 593, 126 N.E.2d 657.) In Gebbie, the court held that the abatement of a tax rests within the sound discretion of the District, commenting:
"[I]f the district were required to abate each year for the full amount of [the challenged] items, the net result would be that each fund would show a net balance of zero for each year. Such a method in the face of the reality that tax collections are uncertain from year to year, would not, in our judgment, constitute a sound business practice. It would appear, rather, that the question of whether the district should, in any give year, abate its levies * * * must be left to the sound discretion of the [district] * * *." Gebbie, 5 Ill.2d at 592-93, 126 N.E.2d 657.
The burden was on Marotta to present a sufficient showing in the circuit court to establish that the District clearly abused its discretion in failing to abate the $6.3 million. Marotta did not cite to any cases in which a tax levy was ruled invalid due to circumstances that occurred after the passage of the budget and the corresponding ordinances. Instead, the cited cases reviewed the validity of particular levies at the time they were passed. We believe that if the annual budgetary process is to provide a *567 measure of certainty and finality to a complex and cumbersome process, the appropriation and levy ordinances must be insulated from ongoing collateral attacks that are based on the serendipity of events occurring after the passage of the ordinances. Each year's budget depends, in some measure, on the estimated and realized revenues from the preceding year, as well as anticipated expenses in the coming year. The budget must be adopted a year in advance, based on the estimates. The courts' limited scope of review should not be expanded too freely in second-guessing the necessity for a particular appropriation and levy once the annual budget and ordinances have been adopted. The mere fact that a specific item of appropriation becomes unnecessary before the levy is extended by the clerk is not, in and of itself, an adequate ground for the courts to find an abuse of discretion in failing to abate. Accordingly, we hold that, in the instant case, Marotta has not sustained its considerable burden of proving that the District clearly abused its discretion in failing to abate the challenged portion of the corporate fund levy.

II. Objection to Overestimation of Corporate Fund Expenditures for Goods and Services
Marotta next contends that the District improperly included future expenses in its estimation of corporate fund expenditures for goods and services in 1983. The District set aside slightly in excess of $140 million for goods and services, but the amount actually expended in 1983 totalled approximately $130 million. The difference in the amount estimated and the amount actually expended arose because the District included, in its estimate, a sum for goods and services that were contracted for in 1983 but not actually delivered until 1984 or later. According to Marotta, it was illegal for the District to levy for expenses that were to be paid in another year. In support, Marotta cites to section 5.3 of the Metropolitan Water Reclamation District Act (Ill.Rev.Stat.1991, ch. 42, par. 324m).
Section 5.3 of the Act is a lengthy statute that involves the budgeting process, including the estimation, appropriation, and levying of taxes. According to Marotta, this statute provides that the District's levies may include appropriations for current expenditures only and that the District violated this statute by levying 1983 taxes for expenditures that would not occur until after the 1983 budget year. Marotta states, without elaboration, that section 5.3 "requires the appropriation of levy for expenses to be `made or incurred' in the Budget year." However, Marotta does not explain the manner in which the District's estimates of expenditures violated section 5.3.
Section 5.3 requires the District to estimate current assets and liabilities of each fund at "the beginning of the district's budget year" and to estimate "the amounts of such assets available for appropriation in such year, either for expenditures or charges to be made or incurred during such year or for liabilities unpaid at the beginning thereof." (Emphasis added.) (Ill.Rev.Stat.1991, ch. 42, par. 324m.) By its terms, the statute contemplates the estimate of assets available for charges to be incurred during the budget year as well as expenditures to be made. In this case, contract charges were incurred in the 1983 year even though they were to be paid in later years.
The District relies on section 5.8 as additional support for its authority to include, in its 1983 levies, charges incurred in the budget year. Section 5.8 prohibits the making of a contract, or the incurring of an expense or liability, "unless an appropriation therefor shall have been previously made." (Ill.Rev. Stat.1991, ch. 42, par. 324r.) This language requires that the District include in its appropriations for the budget year an amount of money needed to fulfil a contract or pay an expense or liability incurred during that year. Section 5.8 further provides:
"No officer, head of a department, or commission shall, during a budget year, expend or contract to expend any money or incur any liability, or enter into any contract, which, by its terms, involves the expenditure of money * * * in excess of the amounts appropriated in said ordinance. Any contract * * * made in violation of this section shall be null and void as to the district * * *; provided, however, *568 that nothing herein contained shall prevent the making of contracts for the lawful purposes of said district, the terms of which contracts may be for periods of more than one year, but any contract so made shall be executory only for the amounts for which the said district is lawfully liable in succeeding budget years.
* * * Every obligation of the District for purchase orders, contracts, or other commitments shall be reported in the appropriation record irrespective of the contemplated date of delivery, receipt, or payment." Ill.Rev.Stat.1991, ch. 42, par. 324r.
The trial and appellate courts held, and we agree, that the above statute supports the District's contention that it was required to include in its 1983 budget and appropriations record amounts for goods and services for which it contracted in 1983, even though they were not delivered in that year. The relevant statutory provisions indicate that the District may incur an obligation in one budget year, for which it must appropriate money, even though the delivery of the goods or services occurs in a subsequent year. (See People ex rel. Harding v. Chicago & Northwestern Ry. Co. (1928), 331 Ill. 544, 546, 163 N.E. 355 (upholding a levy for an amount to pay bonds which did not come due for two years and stating that taxing authorities need not wait until the money is actually needed to pay outstanding obligations before taxes may be levied).) Marotta has not offered persuasive authority for us to reverse the ruling of the appellate court on this issue.

III. Objection to the District's Estimation of Its Corporate Fund Surplus Available for Appropriation
Marotta contends that the District underestimated its corporate fund surplus "by at least 30% based on a budgetary basis of accounting and by as much as 70% under generally accepted accounting principles." Such a statement, bereft of supporting facts and definitions, does little to assist this court. Apparently, Marotta derives the 30% figure by comparing the corporate fund's estimated beginning surplus of approximately $16 million with the actual surplus that was available, $21 million, a differential of $5 million.
The District responds that its estimate of the budget year's beginning surplus incorporates the estimates of certain, widely varying components: the revenues of the year preceding the budget year; the expenditures of the year preceding the budget year; and the actual surplus of the year preceding the budget year. To this estimated beginning surplus are added the revenues that the District estimates are available for the budget year. The total of the estimated surplus (also called "net assets appropriable") and the estimated revenues equals the total corporate budget.
In the instant case, the District estimated a beginning surplus in the corporate fund of $15,082,360. This sum represented the assets estimated to be remaining from the 1982 budget after subtracting current liabilities and designations. To this sum was added anticipated revenues of $132,571,000, for a total anticipated budget figure of $148,653,000. These were the figures upon which the District made its appropriations and levies for the year 1983.
Financial records compiled at the end of the budget year indicated that the beginning surplus available for appropriation in 1983 actually turned out to be $21,063,000, or approximately $5 million more than estimated. However, the actual revenues that were available for the year were approximately $2 million less than anticipated in the budget for 1983. Accordingly, the District contends that "[t]he difference between the [estimated budget] total [$148.7 million] and actual total [$151.4 million] is $2,778,000, which is a 1.9% difference between overall budgeted figures and actual figures."
The burden of establishing facts to support a tax objection is on the objector. (E.g., Fleetwood, 413 Ill. 530, 109 N.E.2d 741.) There is a strong presumption in favor of the taxing authorities' proper exercise of their duties and the presumption must be overcome by clear and convincing evidence. In re Application of Rosewell (1985), 106 Ill.2d 311, 88 Ill.Dec. 28, 478 N.E.2d 343; People ex rel. Wilson v. Wabash Ry. Co. (1938), 368 Ill. 497, 14 N.E.2d 650.
In the instant case, Marotta demonstrated only that there was a discrepancy *569 between the amount estimated and the amount actually available. The timing of the budgeting process is such that exact figures for certain components of the budget are not available at the time the estimations are calculated. We conclude that the appellate court correctly held that Marotta had not sustained its burden of proof as to this issue.

IV. Objection to Vagueness of Itemized Appropriations
As his final objection to the corporate fund levy for 1983, Marotta argues that certain of the District's itemized appropriations were too vague for the taxpayers to ascertain their purpose. The District is required by statute to specify the objects and functions for which appropriations are made. (Ill.Rev.Stat.1991, ch. 42, par. 324m.) An appropriation that does not adequately disclose its purpose is illegal and an illegal appropriation cannot be used in making a valid levy. (E.g., People ex rel. Bergan v. New York Central R.R. Co. (1946), 392 Ill. 525, 64 N.E.2d 895.) According to Marotta, the District's designations of such items as "Governmental Service Charge," "Repairs to Collection Facilities," and "Equipment For Waterway Facilities" do not sufficiently describe the nature of the appropriations. He cites People ex rel. Schlaeger v. Bunge Brothers Coal Co. (1945), 392 Ill. 153, 64 N.E.2d 365, a case in which the court held that the term "facilities" was too vague a designation to satisfy the disclosure requirement for appropriations, in part because the designation for construction of an airport "terminal building and facilities" did not reveal how much of the appropriation was for the building and how much was for facilities.
In response, the District maintains that its budget documents provide specific information by using department and section headings, under which the particular appropriations are itemized. For example, an appropriation for waterway equipment would be found in the budget as part of the total machinery and equipment used for the Calumet area of the maintenance and operations department. According to the District, this method of designation provides the necessary degree of specificity.
The appellate court held that the challenged appropriations were not void for being vague, stating that "specification of each item of expense for which a levy is made is not required; a single general purpose is sufficient to include every appropriate expenditure required, although there may be many items." (241 Ill.App.3d at 758-59, 182 Ill. Dec. 130, 609 N.E.2d 664, citing People ex rel. Sweet v. Central Illinois Public Service Co. (1971), 48 Ill.2d 145, 268 N.E.2d 404.) The dissenting justice concurred in the majority's opinion on this issue. We conclude that Marotta failed to establish the invalidity of the itemized appropriations based on vagueness.
Marotta's final objection is directed toward the 1983 reserve levy for loss and cost estimates attributable to the levies challenged elsewhere in this opinion. According to Marotta, the reserve levy must be invalidated to the extent the reserve estimates were based on the illegal portions of the challenged corporate fund levies. (See Fleetwood, 413 Ill. at 554, 109 N.E.2d 741.) Because we do not invalidate the levies Marotta challenges in this appeal, we need not consider this issue further.
We have reviewed the additional arguments submitted on behalf of both sides by amici curiae. However, we decline to lengthen this opinion to include such additional arguments, which do not alter our reasoning or disposition of this case. We affirm the decision of the appellate court.
Appellate court affirmed.
Justice HEIPLE, dissenting:
I dissent as to that portion of the majority's opinion relating to the tax levy for $3.8 million for interest on tax anticipation notes. The majority's analysis of whether this levy should have been abated is an inadequate attempt at resolving this question. Rather than reviewing the facts of this case, the majority reaches its conclusion that the District did not abuse its discretion by reciting a mantra of general legal principles. Proper application of the abuse of discretion standard to the facts of this case, however, leads to the inescapable conclusion that the District *570 abused its discretion in not abating the taxes in question.
The 1983 District budget was adopted December 9, 1982, and amended December 16, 1982. Included in this budget was the expenditure of $3.8 million in interest on tax anticipation notes.
On February 2, 1983, however, Public Act 82-1046 took effect. (Ill.Rev.Stat.1991, ch. 42, par. 324q.) Public Act 82-1046 eliminated the need for the $3.8 million expenditure by authorizing the issuance of working cash bonds.
In spite of the fact that the $3.8 million was no longer needed, in June 1984, some 18 months after the passage of Public Act 82 1046, the county clerk extended this levy against 1983 taxpayers.
It is uncontroverted that the appropriation and tax levy of this item and the failure to abate it resulted in an unnecessary accumulation. Accordingly, the objector argued to this court that the District should have abated the levy.
In reviewing the objector's contention, the majority initially, and correctly, finds that the District has discretionary power to abate tax levies. The majority, however, goes on to hold that the objector failed to prove that the District clearly abused its discretion in failing to abate the levy. In so holding, the majority stated:
"Marotta did not cite to any cases in which a tax levy was ruled invalid due to circumstances that occurred after the passage of the budget and the corresponding ordinances. Instead, the cited cases reviewed the validity of particular levies at the time they were passed. We believe that if the annual budgetary process is to provide a measure of certainty and finality to a complex and cumbersome process, the appropriation and levy ordinances must be insulated from ongoing collateral attacks that are based on the serendipity of events occurring after the passage of the ordinances. * * * The courts' limited scope of review should not be expanded too freely in second-guessing the necessity for a particular appropriation and levy once the annual budget and ordinances have been adopted. The mere fact that a specific item of appropriation becomes unnecessary before the levy is extended by the clerk is not, in and of itself, an adequate ground for the courts to find an abuse of discretion in failing to abate." 159 Ill.2d at 410-11, 203 Ill.Dec. at 246-47, 639 N.E.2d at 566-67.
I cannot agree with or abide by the majority's analysis. The fact that there are no previous cases exactly like the one at bar should not prevent the majority from examining the District's actions. This court is not dependent upon a spotted cow case to determine whether a given entity has abused its discretion.
Further, I would hardly characterize the objector's claim in this case as a collateral attack of an appropriation levy based on subsequent, serendipitous events. The budgeted-for expenditure was reviewed by the legislature and the need was specifically eliminated through alternative funding. It was not a random fortuitous event that caused the levy to be unnecessary.
Finally, I take issue with the majority's refusal to engage in any analysis and hiding behind the thin veil of purporting to not second-guess the decisionmaking body. There is a difference between second-guessing and reviewing for abuse of discretion. In this case, the majority did neither.
If the majority had reviewed for abuse of discretion rather than conferring unbridled authority to the District, it would have reviewed the chronology of events. The majority then would have been forced to focus on the fact that the county clerk extended a $3.8 million levy for a budget item that had been made superfluous 14 months prior to the levy. That is, the District now has $3.8 million of taxpayers' money with which it is not authorized to do anything with. Under these circumstances, the only conclusion one can reach is that it was an abuse of discretion not to abate the levy.
For the foregoing reasons, I respectfully dissent.
NICKELS, J., joins in this dissent.